954 F.2d 1540
 Robert SCHMELZ, as Guardian of the incompetent James Michael
Schmelz, Plaintiff-Appellee, Cross-Appellant,
v.
MONROE COUNTY, a Political Subdivision of Florida, Defendant,
Sheriff J. Allison Defoor, II, Jody Baker and Jeffrey
Koppin, Defendants-Appellants, Cross-Appellees.
 No. 90-5684.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 19, 1992.
 
 Julius F. Parker, Parker, Skelding, Labasky & Corry, Tallahassee, Fla., for defendants-appellants, cross-appellees.
 Marilyn Sher, Chonin & Sher, Coral Gables, Fla., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Southern District of Florida.
 Before FAY, Circuit Judge, HENDERSON and CLARK*, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert Schmelz as guardian of an incompetent, James Michael Schmelz, filed this suit against Monroe County, Florida, Sheriff J. Allison Defoor, and Jody Baker and Jeffrey Koppin, employees of the Sheriff's Department, in the United States District Court for the Southern District of Florida seeking damages pursuant to the provisions of 42 U.S.C. § 1983 and which arose out of injuries to James Michael Schmelz while incarcerated in the Monroe County jail. The plaintiff-appellant, Robert Schmelz, appeals the grant of summary judgment in favor of Sheriff Defoor on Schmelz's claims of failure to provide safe custodial care for inmates of the jail and failure to provide adequate training for jail personnel. The defendants-appellees appeal the denial of their motions for summary judgment predicated on qualified immunity and immunity under the eleventh amendment to the Constitution of the United States. Finding that the district court correctly granted summary judgment to Sheriff Defoor but erred in denying relief to all the defendants on grounds of qualified immunity, we affirm in part and reverse in part.
 
 
 2
 James Schmelz was arrested on March 28, 1989, and taken to the Monroe County Sheriff's Department holding facility in Marathon, Florida. He had been arrested by members of the Sheriff's Department on numerous occasions prior to March 28, 1989, during which times he always behaved in a belligerent and combative manner. However, when brought to the jail on March 28, 1989, he appeared to be quiet and subdued. The ranking correctional officer on duty, Jody Baker, recognized this change in his deportment and decided that he should be lodged in a cell closest to the booking area. As a further precaution, Baker ordered that Schmelz be placed on a suicide watch which, under the policies of the Sheriff's Department, required that he be visually observed every fifteen minutes. Officer Koppin was assigned to this duty.
 
 
 3
 Schmelz was last observed by Koppin at 1:14 p.m. At 1:19 p.m. a trusty informed Koppin that Schmelz was trying to hang himself. Koppin and other officers responded immediately and found Schmelz sitting on the floor of the cell with a blanket tied around his neck and extended to the bars of the cell. He was cut loose immediately and CPR was administered by jail personnel. He was revived by an emergency medical team and taken to a nearby hospital. At some point he went into an irreversible coma and remains hospitalized. There was no evidence that prior to this occurrence on March 28, 1989, Schmelz had either threatened or attempted suicide.
 
 
 4
 This action was commenced on March 1, 1990, by Robert Schmelz, on behalf of James Michael Schmelz, alleging the deprivation of James Schmelz's civil rights in violation of 42 U.S.C. § 1983,[1] the eighth and fourteenth amendments to the United States Constitution and Florida law, and against the defendants in their individual and official capacities. Sheriff Defoor moved the district court to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim based on his assertion that a single incident of attempted suicide is not sufficient to establish that the sheriff promulgated an official policy or custom which caused James Michael Schmelz's injury. The defendants also moved to dismiss the complaint premised on grounds of good faith qualified immunity, eleventh amendment immunity and failure to state a claim under the eighth and fourteenth amendments. The district court denied all the defendants' motions to dismiss.
 
 
 5
 After answering the complaint, the defendants filed motions for summary judgment raising the same arguments made in their motions to dismiss. Sheriff Defoor again specifically realleged his earlier contention that one attempted suicide in the county jail was inadequate as a matter of law to establish a custom or policy causing Schmelz's injury. The other defendants principally relied on good faith qualified immunity as well as the previous grounds pled in the motions to dismiss. The motions for summary judgment were supported by affidavits and depositions[2] of the defendants. Schmelz relied upon his pleadings and the memorandum of law that he filed in response to the motions to dismiss.
 
 
 6
 On August 3, 1990, the district court entered an order granting in part and denying in part the motions for summary judgment. The court granted Defoor's motion for summary judgment on the issue of custom or policy. It denied the defendants' motions for summary judgment based on the qualified immunity, eleventh amendment immunity and violations of the eighth and fourteenth amendments. These appeals followed.
 
 
 7
 Before proceeding with consideration of the merits of the immunity issues, we must first determine whether we may exercise pendant appellate jurisdiction over normally nonappealable orders of the district court. This is because 28 U.S.C. § 1291 grants appellate courts jurisdiction to hear only appeals of final orders of the district court. Generally, an order denying a motion for summary judgment is not an appealable final order. Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1508 (11th Cir.1990). However, the courts have recognized that there exists "a small class of interlocutory orders, referred to as 'collateral orders,' which are offshoots of the principal litigation, and which are immediately appealable without regard to the posture of the underlying case." Stewart, 908 F.2d at 1508 (citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 
 8
 One such collateral order is an appeal from a denial of summary judgment on the question of good faith qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411, 427 (1985). This conclusion that the denial of qualified immunity is considered a "final decision" under 28 U.S.C. § 1291 is predicated on the notion that it is not a defense to the action, but an "entitlement [to] immunity from suit." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425 (emphasis in original). Resolution of the immunity issue before trial usually puts an end to the litigation. Thus, the defendants' appeals of the denial of qualified immunity is properly before us.
 
 
 9
 We must next resolve whether we have jurisdiction over the other issues raised by the defendants and Schmelz. In Stewart, we held that we could exercise pendant jurisdiction over a claim of eleventh amendment immunity without deciding whether it is an appealable collateral order under the Mitchell rationale. "Pendant jurisdiction is properly exercised over nonappealable decisions of the district court when the reviewing court already has jurisdiction over one issue in the case." Stewart, 908 F.2d at 1509. This rationale is based on concerns for judicial economy. Id.
 
 
 10
 Since we already have jurisdiction over the district court's qualified immunity order denying summary judgment, resolution of its decisions concerning eleventh amendment immunity, Defoor's claim that he had not created a custom or policy resulting in Schmelz's injury and the deliberate indifference charge against all of the defendants could put an end to the federal aspects of this case.[3] Therefore, based on the doctrine of judicial economy, we will exercise pendant appellate jurisdiction over the ordinarily nonappealable claims.
 
 
 11
 Defoor, Baker and Koppin urge that the district court erred in not granting their motion for summary judgment because of eleventh amendment immunity. This issue can be dealt with in short order. A panel of this court earlier determined that Florida sheriffs are not entitled to eleventh amendment immunity in section 1983 cases because they are county officers instead of state officials. Hufford v. Rodgers, 912 F.2d 1338 (11th Cir.1990) cert. denied, --- U.S. ----, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). Consequently, because they are not state officials, they may not take advantage of state immunity as otherwise permitted by the eleventh amendment.
 
 
 12
 The other alleged errors cannot be disposed of as summarily. Our review of the district court grant or denial of a motion for summary judgment is plenary. However, we are bound to the same test as that of the district court. The grant of a motion for summary judgment is proper, according to Fed.R.Civ.P. 56(c), if all the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.
 
 
 13
 The Supreme Court has since articulated the burden of production that is required of the nonmoving party.
 
 
 14
 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 15
 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 273 (1986).
 
 
 16
 With these general principles as our guide, we examine Schmelz's claim that the district court erred in granting summary judgment to Defoor on the issue of whether he, as the sheriff, promulgated a policy that gave rise to the alleged unconstitutional actions which led to Schmelz's attempted suicide. The Supreme Court has stated that "a single incident of unconstitutional activity is not sufficient to impose liability ... unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791, 804 (1985). Where the policy itself is constitutional, inadequate police training may establish § 1983 liability if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).
 
 
 17
 There is nothing in the record to suggest that the sheriff had a written policy for dealing with suicidal inmates. The record does reveal through the deposition testimony of Baker and Koppin that there existed an unwritten policy. Though their testimony was not specifically oriented to the scope of the policy, enough can be gleaned from their deposition testimony to conclude that whatever the policy's failings it was not facially unconstitutional. The policy, as revealed by Baker and Koppin, made an effort to identify and protect potentially suicidal inmates from self-harm. Schmelz has not shown that their failure to do more resulted from inadequate training amounting to deliberate indifference to the needs of the jail's inmates. As was the case with the district court, we cannot draw any further conclusions. Therefore, we agree with the district court that there existed no evidence that Defoor promulgated an unconstitutional policy or custom that led to Schmelz's injuries.
 
 
 18
 The district court denied the defendants' motions for summary judgment on good faith qualified immunity. Good faith qualified immunity is a doctrine that protects government employees from suit for actions that " 'legitimately require action in which clearly established rights are not implicated' " and the public interest would be better served in insulating the official from liability for exercising the discretionary actions. Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Since the district court denied these motions for summary judgment, our inquiry is whether "the law clearly proscribed the actions that the defendant claims he took." Id., 472 U.S. at 528, 105 S.Ct. at 2816, 86 L.Ed.2d at 426. A government official will be protected from suit if the rights that he allegedly violated were unclear at the time of his actions or he reasonably believed that what he was doing did not violate clearly established law. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir.1989).
 
 
 19
 In cases involving injuries or death to prison inmates, the prisoner must show that the officials were deliberately indifferent to his medical needs. Aldridge v. Montgomery, 753 F.2d 970, 972 (11th Cir.1985). Once qualified immunity is asserted by the defendants, the plaintiff must show that the law was clearly established that the defendants' acts rose to the level of "deliberate indifference." Edwards, 867 F.2d at 1275. In Edwards, decided a month before Schmelz attempted suicide, this court stated that "[in] the absence of a previous threat or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." Id. at 1275. The facts in Edwards closely parallel those of this case. Dustin Molbert, a juvenile, was placed in an adult holding cell while awaiting sentencing for his conviction of sexual assault on a minor. The correctional officers checked his cell every fifteen minutes. When he was observed at 3:45 a.m., he and the other juvenile in the cell were asleep. The officer charged with watching the cell was asked to help in another part of the jail. When he returned forty-five minutes later, Molbert was dead. Molbert was found hanging from the cell bars with a sheet around his neck. Id. at 1272-73. There was no indication that he had previously tried or threatened to commit suicide. Id. at 1272. There was evidence that Molbert had requested to see the jail psychologist four days before he killed himself. Id.
 
 
 20
 Officer Baker, in her deposition testimony, stated that when she booked Schmelz into the jail that day he was "very mellow" in contrast to her past encounters with him. R1, Tab 40 (Deposition of Jody Baker). Baker was aware that he had escaped from the deputies after his arrest the night before. Id. She had somewhere read a statistic that 30% of prisoners who were recaptured after escaping tried to commit suicide. Id. Consequently, she took the more prudent course and placed him on a suicide watch. However, when she asked Schmelz if he was contemplating harm to himself, he quickly responded "no." Id.
 
 
 21
 Schmelz was last observed at 1:14 p.m. He was found hanging from the bars of the cell with the blanket tied around his neck five minutes later at 1:19 p.m. Koppin, the correctional officer assigned to check on him, left that part of the jail for approximately two and a half minutes before being alerted that Schmelz was trying to hang himself. R1, Tab 40 (Deposition of Jeffrey Koppin). The incident report stated that the rules required the continuous presence of a correctional officer in the jail area during a suicide watch. R1, Tab 40 (Incident Report).
 
 
 22
 It is impossible to say that Baker was "deliberately indifferent" to Schmelz's health needs. In fact, she went beyond standard procedure to place him on a suicide watch. The failure to remove the blanket and Koppin's two minute absence can be characterized at best as mere negligence. This is not enough for section 1983 liability. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976). "The deliberate indifference standard is met only if there was a 'strong likelihood, rather than a mere possibility,' that self-infliction of harm would result." Edwards, 867 F.2d at 1276 (citations omitted).
 
 
 23
 No matter how defendants' actions might be viewed, the law in this circuit makes clear that they cannot be liable under § 1983 for the suicide of a prisoner "who never had threatened or attempted suicide and who had never been considered a suicide risk." Id. at 1277. Therefore, we conclude that the defendants' actions did not constitute deliberate indifference under the circumstances and that the district court erred in failing to grant the defendants' motions for summary judgment on the issues of qualified immunity and deliberate indifference.
 
 
 24
 For the foregoing reasons, the orders of the district court are AFFIRMED in part and REVERSED in part.
 
 
 25
 All outstanding motions are DENIED as moot.
 
 CLARK, Senior Circuit Judge, concurring:
 
 26
 I concur in the result only.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 42 U.S.C. § 1983 states:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 Id.
 
 
 [2]
 The depositions were taken during an internal investigation into the incident
 
 
 [3]
 Our resolution of the § 1983 claims does not affect the merits of Count V, the pendant state negligence count. However, our holding that the district court should have granted summary judgment on the qualified immunity issue in favor of the defendants will deprive the district court of jurisdiction over the pendant state claim. Therefore, the claim will either have to be dismissed or transferred to the state courts. See Bolden v. Alston, 810 F.2d 353, 358 (2d Cir.1987)