**Reginald SCOTT, Plaintiff,**

**v.**

**CITY OF LANETT, et al., Defendants.**

**Civ. A. No. 92–D–1037–E.**

United States District Court,
M.D. Alabama, E.D.

Nov. 4, 1993.

J. Bernard Brannan, Jr., Andy D. Birchfield, Jr., Montgomery, AL, for plaintiff.

Alex L. Holtsford, Jr., H.E. Nix, Jr., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

Now before the court is defendants City of Lanett and Robert Lee Vinson's motion for summary judgment, filed September 1, 1993. Plaintiff Reginald Scott responded on September 20, 1993. For the reasons set out below, both defendants City of Lanett and Robert Lee Vinson's motion for summary judgment is due to be granted.

### FACTS

On the evening of January 31, 1991, Reginald Scott went to Newt's Chicken to purchase dinner for himself and his wife. He was returning home after he had visited a friend whose granddaughter had died. Scott was to be in charge of the flowers for the funeral. While at Newt's Chicken, another friend, Fred Barnes, requested that Scott

give him a ride to the Hilltop Lounge. After reaching the lounge, Scott entered the establishment to visit with owner Dennis Story. During his visit in which he allegedly consumed no alcohol, Scott said hello to police officer Christopher Williams.

After leaving the Hilltop Lounge, Scott proceeded toward his home in his car. Because his windshield became "fogged," Scott began wiping the glass surface with a cloth to remove condensation caused by the cold weather. In his attempt to clear the glass, Scott allegedly veered over the center line. It was at this time that Officer Williams pulled Scott over.

After Scott stepped out of his vehicle, Williams requested that Scott perform a field sobriety test which involved touching his nose with his forefinger. Scott was unable to touch his nose with his right arm. According to Scott, he was unable to do so because of a prior injury to his shoulder. Williams then instructed Scott to recite the alphabet, but Scott claims that Williams would not let him finish because he was singing the alphabet instead of saying the letters. At that time, Williams arrested Scott for DUI and cuffed him. Scott requested that he be cuffed in the front instead of the back due to his shoulder difficulties. Williams denied the request and secured the handcuffs behind Scott, allegedly in a manner which aggravated Scott's prior shoulder injury.

While proceeding to the police car, Scott alleges that Williams informed him that he had paid Scott's stepdaughter in cocaine to have sex with him and that everybody else was doing the same. When Scott allegedly responded that Williams should not have to pay for sex, Scott contends that Williams struck him on the side of his head with an open hand and later with a hard object that Scott contends was a baton.

At that point in the arrest, another police officer, Sergeant Bryan Poe, arrived at the scene and assisted Williams in placing Scott in the police car in which Scott was to be transported to the police station. During that process, Scott alleges that Williams hit him repeatedly, pulled his hair, and allowed him to fall from the car causing him to strike his head on the door frame.

Upon arrival at the police station, Scott allegedly was involved in another altercation with Williams which ended with Scott being held down on the floor by several officers. Scott was then taken to a cell while allegedly remaining handcuffed although the handcuffs were later moved from the back to the front. Scott refused to take a breath test when he arrived at the station. After being processed, which took approximately two hours, Scott was transported to the county jail by Williams and another officer. While walking to the entrance of the jail, Scott alleges that Williams struck him in the back of the head several times causing him to fall to the ground. Williams then transferred custody of Scott to the sheriff's deputies at the jail and left the premises.

Williams charged Scott with driving on the wrong side of the road, driving under the influence, disorderly conduct, and resisting arrest. Scott was found guilty of those charges in District Court, but was acquitted of the charges on appeal in Circuit Court when Williams, the arresting officer, was not subpoenaed to appear in court.

Scott alleges that Williams arrested him without probable cause. Furthermore, Scott alleges that Police Chief Robert Lee Vinson and the City of Lanett failed to properly supervise and train their police officers. In addition, Scott alleges that under the command of Robert Lee Vinson, the City of Lanett had a policy or custom of condoning unlawful arrests and the excessive use of force and that the City failed to meaningfully investigate citizen complaints and incidents involving the use of force.

## DISCUSSION

### I. *Robert Lee Vinson*

 Robert Lee Vinson, Chief of Police, in his individual capacity is not subject to suit unless he is alleged to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendant Vinson urges the court to grant summary judgment in his favor argu-

ing that he is entitled to good faith qualified immunity. "Good faith qualified immunity is a doctrine that protects government employees from suit for actions that 'legitimately require action in which clearly established rights are not implicated' and the public interest would be better served in insulating the official from liability for exercising discretionary actions." *Schmelz v. Monroe County,* 954 F.2d 1540, 1544 (11th Cir.1992) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). The test is whether the law clearly proscribes the actions that the defendant claims he took. *Schmelz,* 954 F.2d at 1544. "A government official will be protected from suit if the rights that he allegedly violated were unclear at the time of his actions or he reasonably believed that what he was doing did not violate clearly established law." *Id.* (citing *Edwards v. Gilbert,* 867 F.2d 1271, 1273 (11th Cir.1989)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

"A supervisor can be held liable under § 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate." *McKinney v. De-Kalb County, Ga.,* 997 F.2d 1440, 1443 (11th Cir.1993) (citing *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990). Scott alleges that defendant Robert Lee Vinson approved the City of Lanett's use of force policies and training procedures and that Vinson exhibited indifference and encouraged the use of force by city police officers. As a result, Scott argues that the police officers were not properly trained in the correct way to handle intoxicated arrestees.

■ The issue of whether summary judgment should be granted based on qualified immunity is a purely legal one. Thus, it is a question of law to be decided by the court. In order to arrive at that finding, the court must determine whether there was a violation of a clearly established constitutional right. *See Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988).

■ Robert Lee Vinson, while police chief, enforced previously instituted policies concerning the use of force to effectuate arrests. These policies were periodically reviewed to ensure their continued effectiveness. (Vinson dep. at 93). During his tenure, sworn officers were required to be trained as to proper police techniques at a police academy. (Vinson dep. at 37). Manuals containing police policies were distributed at the academy as well as upon entrance to the City of Lanett police force. Also, use of force reports were completed by supervising officers and reviewed by Vinson whenever force was used in an arrest. (Vinson dep. at 86). Although use of force reports were filled out more often when the arrestee was intoxicated, Vinson contends that this was because by the condition of the arrestee and not because the police officers did not know how to handle the arrest. (Vinson dep. at 88). Additional training and instruction were given concerning the handling of intoxicated persons as a part of the department's continuing education efforts. (Vinson dep. at 89). In addition, citizen complaints about force were investigated and handled according to the department policies in place. (Vinson dep. at 84).

■ The court finds that Vinson, acting as a reasonable person, would not have known that his conduct, in instituting and implementing policies concerning the use of force, infringed upon the constitutional rights of Scott. In addition, the court finds that even if Scott's constitutional rights were violated during his arrest by Vinson's subordinate, Chris Williams, Vinson's conduct was not causally related to that conduct. There is no evidence that Williams was inadequately trained on how to handle the situation or that Vinson encouraged the use of excessive force in the arrests of intoxicated persons.

For the reasons stated above, Robert Lee Vinson is entitled to qualified immunity as a matter of law. The evidence submitted by Scott in opposition to defendants' motion for summary judgment fails to establish a disputed issue of fact regarding whether Robert Lee Vinson's actions or omissions, as a su-

pervisor of the City of Lanett Police Department, with respect to training or use of force policies, would violate any clearly established constitutional right. Accordingly, summary judgment in favor of defendant Robert Lee Vinson as to the claim under § 1983 is due to be granted.

In regard to the pendent state claims, assault and battery, malicious prosecution, and false imprisonment, defendant Vinson's motion for summary judgment is due to be granted. The plaintiff has offered no evidence that defendant Vinson participated in any way in the alleged events giving rise to the state law counts in the complaint.

## II. *The City of Lanett*

■ A city may only be held accountable for the deprivation of a citizen's constitutional rights if the deprivation was the result of municipal "custom or policy." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to be held liable under § 1983, the policy or custom must be the "moving force" behind the constitutional deprivation. *Monell*, 436 U.S. at 694–95, 98 S.Ct. at 2037–38; *see Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir.1990) (holding that allegations against the county police department were sufficient to survive a motion for summary judgment). "Failure to properly train municipal police officers is considered a 'policy or custom' that gives rise to § 1983 liability when such failure reflects deliberate indifference to the constitutional rights of municipal inhabitants." *McKinney v. DeKalb County, Ga.*, 997 F.2d 1440, 1442 (11th Cir.1993) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–392, 109 S.Ct. 1197, 1204–06, 103 L.Ed.2d 412 (1989)). A failure to train only rises to the level of deliberate indifference when the municipality has made a conscious choice not to train or to inadequately train. *See Canton*, 489 U.S. at 389, 109 S.Ct. at 1205.

■ The first inquiry under *Monell* to determine municipal liability is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385, 109 S.Ct. at 1203. Secondly, before such liability arises for the failure to train, "the need for such training must be plainly obvious to [d]epartment decisionmakers." *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990). The Eleventh Circuit Court of Appeals in *Wright* held that where a sheriff had no actual notice of unconstitutional practices by a deputy and where there were no widespread prior abuses by the sheriff department's personnel, the plaintiff had failed to carry the burden of proof as to the departmental liability.

■ If the policy itself is unconstitutional, proof of a single incident may be sufficient to establish liability to the municipality under § 1983 if the proof also establishes that the policy was promulgated by the municipality. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). However, when the policy is constitutional, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436.

■ As noted above, Chief of Police Robert Lee Vinson, under authority granted by the City of Lanett, enforced policies that had been instituted prior to his tenure concerning the use of force and had updated those policies periodically. The policies directed the police officers to use the minimum amount of force necessary to effect an arrest. Moreover, police officers were trained in the proper procedures concerning the amount of force to be used during arrests while at the police academy. All police officers were required to attend the police academy, and manuals concerning all departmental policies were given to each police officer. Material citizen complaints were investigated pursuant to department policy.

From the facts above, the court finds that the police department's policies were not clearly unconstitutional. From ought that appears and from the testimony in the depositions, the City of Lanett made a distinct effort to educate its officers in regard to the use of force. In cases where the policies are not clearly unconstitutional, much greater

proof than a single incident will be necessary to prove the requisite fault on the part of the city and to prove the causal connection between the policy and the constitutional violation. Scott has not offered any evidence of incidents prior to or at the time of his arrest that support a causal connection between the policies in place at the time of his arrest and any alleged constitutional violations that may have occurred during his arrest.

■ Furthermore, Scott asserts that citizen complaints arising after he was arrested regarding the use of force on intoxicated arrestees support a de facto city policy concerning the use of force. Scott alleges these incidents are proof of a causal connection between the policy and the alleged constitutional violation. In order to impose liability upon a city for a policy or custom, a plaintiff must prove a causal link between the policy and the constitutional violation; the plaintiff must show that the policy was the "moving force" behind the violation. Incidents that occurred after Scott was arrested are not relevant to prove the policies that existed at the time in question. Thus, the court finds that alleged incidents, occurring after Scott was arrested where force was used on intoxicated arrestees, do not raise issues of material fact in regard to whether a policy or custom warrants liability under § 1983.

From the testimony in the depositions, Chief of Police Vinson, under the authority delegated to him by the City, took reasonable steps to train and educate his police force as to the law on the use of force while dealing with arrestees. The court finds that the City of Lanett Police Department policies and customs relating to the use of force do not reflect a deliberate indifference to the constitutional rights of Lanett's inhabitants. Thus, because a municipality may only be held liable under § 1983 for constitutional violations resulting from a policy or custom, the court finds as a matter of law that the City of Lanett may not be held liable under § 1983. The City of Lanett's motion for summary judgment is due to be granted as to the claims pertaining to § 1983.

■ In regard to the pendent state claims of malicious prosecution, false imprisonment, and assault and battery, municipal governments, under Alabama law, may not be held liable for those intentional torts. *See* *Brooks v. City of Birmingham,* 584 So.2d 451 (Ala.1991). Thus, as to those counts of the complaint, summary judgment in favor of the defendant City of Lanett is due to be granted.

### Conclusion

For the reasons cited above, it is CONSIDERED, ORDERED, and ADJUDGED that defendant Robert Lee Vinson's motion for summary judgment be and the same is hereby GRANTED as to the § 1983 claim and the pendent state claims. It is also CONSIDERED, ORDERED, and ADJUDGED that defendant City of Lanett's motion for summary judgment be and the same is hereby GRANTED as to the § 1983 claim and the pendent state claims.