867 F.2d 1271
 Willie T. EDWARDS, as Personal Representative of the Estate
of Dustin Wade Molbert, on behalf of the Estate
and on behalf of the Survivor, Willie T.
Edwards, Plaintiff-Appellee,
v.
Larry GILBERT, individually and in his official capacity as
Sheriff of Okaloosa County, and Leon Blackshear,
Defendants-Appellants.
 No. 88-3348.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 28, 1989.
 
 Julius F. Parker, Jr., Parker, Skelding, McVoy & Labasky, Tallahassee, Fla., for defendants-appellants.
 Randall C. Berg, Jr., Florida Justice Institute, Peter M. Siegel, Miami, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before TJOFLAT and EDMONDSON, Circuit Judges, and GIBSON*, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 We reverse the district court's order denying summary judgment to defendants in their individual capacities in this 42 U.S.C. section 1983 action brought on behalf of a juvenile who committed suicide in prison; we conclude defendants are immune from suit.
 
 
 2
 Dustin Molbert, a juvenile, was tried as an adult and convicted of sexual assault on a child under the age of eleven years. While he was being held in the Okaloosa County Jail awaiting sentencing, he committed suicide in his cell by hanging himself with a bedsheet. Molbert had never threatened or attempted suicide before his successful attempt.
 
 
 3
 According to plaintiff's affidavits, adult inmates who occupied cells close to Molbert's cell or who passed by his cell often verbally abused and threatened him about what would happen to him when he got to state prison. Four days before the suicide, a jail nurse wrote that she had placed Molbert's name on the psychologist's list as requested by "C.O. and inmate." The nurse could not remember whether Molbert saw the psychologist. The jail logs indicate that Molbert was observed, as required by Florida Jail Regulations every fifteen minutes, from the time he was checked into the jail until 3:45 a.m. on the morning of his death, when he and the other juvenile inmate who shared his cell were found to be sleeping. After 3:45 a.m., Defendant Correctional Officer Leon Blackshear went to help in the jail kitchen. When he checked Molbert's cell at approximately 4:30 a.m., Molbert was dead.
 
 
 4
 Plaintiff alleged that defendants violated Molbert's eighth and fourteenth amendment rights through deliberate indifference to Molbert's special needs as a juvenile housed in an adult jail--as manifested by failure to comply with state laws regulating the housing of juveniles in adult jails, failure to take suitable suicide precautions, and failure to staff the jail adequately. Defendant Larry Gilbert, as Sheriff of Okaloosa County, was responsible for the operation of the jail. Defendant Blackshear was in charge of monitoring Molbert on the night Molbert died. Defendants filed a motion for summary judgment asserting a qualified immunity defense. The district court denied the motion.
 
 I. Qualified Immunity
 
 5
 In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. In so holding, the Court established an objective standard to make summary judgment an appropriate device to "avoid excessive disruption of government and permit the resolution of many insubstantial claims...." Id.; Barts v. Joyner, 865 F.2d 1187, 1189 (11th Cir.1989).
 
 
 6
 Once a defendant advances a defense of qualified immunity, he is entitled to summary judgment unless "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). "The words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms...." Azeez v. Fairman, 795 F.2d 1296, 1301 (7th Cir.1986). The Supreme Court has stressed that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 7
 An official will be immune if "the law with respect to [his] actions was unclear at the time the cause of action arose" or if " 'a reasonable officer could have believed ... [his actions] to be lawful, in light of clearly established law and the information ... [the officer] possessed.' " Clark v. Evans, 840 F.2d 876, 879, 880 (11th Cir.1988) (quoting Anderson v. Creighton, 107 S.Ct. at 3040). For purposes of qualified immunity, an abstract mandate to act "with care" or "reasonably" is too vague; "generalities are just not helpful." Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir.1987); see Clark v. Evans, 840 F.2d at 881, 882 (proper inquiry is "fact-specific"; officer who shot and killed fleeing prisoner immune because "[n]o case ha[d] expressly held that an officer has to first shoot to maim before shooting to kill"). In sum, "the qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
 
 II. Section 1983 Cause of Action
 
 8
 Plaintiff asserts a cause of action under the eighth amendment and also under the fourteenth amendment.[1] At the outset, we reject any procedural due process claim. Plaintiff never contends that the jailers' actions in placing Molbert in that particular cell or in failing to observe him for an interval of more than fifteen minutes could have been proper if some sort of hearing had preceded the events surrounding Molbert's suicide.
 
 
 9
 Plaintiff does contend that the due process claim arises from defendants' violation of state laws regulating physical conditions of imprisonment. Of course, state law can give rise to procedural due process claims. See Taylor by and through Walker v. Ledbetter, 818 F.2d 791 (11th Cir.1987) (in case involving foster child, court left for trial court to determine scope and extent of duties owed plaintiff). In prison cases, however, the Supreme Court has been conspicuously reluctant to recognize state laws as creating rights protected by the federal constitution. See Hewitt v. Helms, 459 U.S. 460, 467-70, 103 S.Ct. 864, 869-71, 74 L.Ed.2d 675 (1983).
 
 
 10
 The Court has recognized such rights only where the state has used mandatory language to specify procedures which must be used or findings which must be made before benefits are taken away or burdens are placed on individual prisoners. See id. (where state created careful procedural structure to regulate prison administrative segregation, using mandatory language in statutes and regulations requiring specific findings before prisoner could be placed in segregation, federal due process required hearing); Sheley v. Dugger, 833 F.2d 1420 (11th Cir.1987) (where detailed regulations made prisoners' removal from general prison population and placement in limited confinement dependent on individual prisoners' conduct, federal due process required hearing). Here none of the cited statutes or regulations governing the daily operations of Florida's jails vested Molbert, a prisoner, with a federal due process right to an administrative hearing prior to defendants' acts or omissions. See Whitley v. Albers, 475 U.S. 312, 326, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (no procedural due process violation because prisoner was shot had no due process right to hearing before or after shooting), reversing but approving in part 546 F.Supp. 726, 732 n. 1 (D.Ore.1982) ("[N]o regulation or statute was cited which would give plaintiff an expectation of a due process hearing prior to the alleged deprivation of liberty"); Hayward v. Procunier, 629 F.2d 599, 601 (9th Cir.1980) (no procedural due process violation where state law made no distinctions based on prisoner's conduct and did not confer benefit and specify how benefit could be lost).[2]
 
 
 11
 Invocation of fourteenth amendment substantive due process also adds nothing to plaintiff's case. If Molbert is entitled to protection under the eighth amendment, then Molbert is afforded "no greater [substantive] protection" by the due process clause. Whitley v. Albers, 475 U.S. at 327, 106 S.Ct. at 1088. We need not decide whether Molbert, as a convicted but not yet sentenced inmate, is protected by the eighth amendment as a prisoner or the fourteenth amendment as a pretrial detainee because in Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir.1985), we held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons."
 
 
 12
 In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official displayed "deliberate indifference" to the prisoner's taking of his own life. See Whitley v. Albers, 475 U.S. at 327, 106 S.Ct. at 1088; State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir.1983). In addition, once the defense of qualified immunity is raised, the plaintiff must persuade the court that the law was clearly established that the defendant's conduct in the circumstances amounted to "deliberate indifference." See Mitchell v. Forsyth, 472 U.S. at 526-28, 105 S.Ct. at 2815-16; Clark v. Evans, 840 F.2d at 881-82, 884-86.
 
 III. Deliberate Indifference
 
 13
 In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation or any other court within this circuit[3] that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference. See e.g., Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir.1988) (denying defendants' motion for JNOV where jailers had rescued decedent from previous suicide attempt); Partridge v. Two Unknown Police Officers, 751 F.2d 1448 (5th Cir.1985), withdrawn, 755 F.2d 1126 (5th Cir.1985), substituted opinion, 791 F.2d 1182 (5th Cir.1986) (plaintiff stated a valid claim where it was known that detainee-decedent had attempted suicide in previous confinement); Guglielmoni v. Alexander, 583 F.Supp. 821 (D.Conn.1984) (defendants' motion for summary judgment denied where inmate-decedent had "faked" suicide by hanging then actually hung himself a month later); Matje v. Leis, 571 F.Supp. 918 (S.D.Ohio 1983) (defendants' motion for summary judgment denied where inmate-decedent told counsel who told jail officials that inmate would attempt suicide if sent to jail by smuggling in drugs behind her diaphragm and body cavity search was not performed at jail); Francis v. Pike County, 708 F.Supp. 170 (S.D.Ohio 1988) (summary judgment in favor of defendants appropriate, where police officer failed to remove the detainee's belt and detainee used belt to hang himself, because there was no evidence that officer or any other employee of sheriff's department knew or should have known that detainee was suicidal); Hutchinson v. Miller, Case No. 86-6005-CA-T (Fla. 18th Cir. Ct. Sept. 15, 1988) (jailers entitled to summary judgment because of absence of evidence that jailers had knowledge of suicidal tendencies, where juvenile inmate asked to remain in doors while his cell mates went out for exercise and hung himself while left alone for an hour).
 
 
 14
 In this case, before Molbert's death there was no mention by Molbert or anyone else of suicidal tendencies. Also, there was no evidence of unusual behavior. Plaintiff relies only on the affidavit of an expert on jail suicides that lists generalized "predisposing factors" which the expert contends should have alerted defendants that Molbert was at risk.[4] The expert is the author of an article on jail suicides which plaintiff contends defendants read or had a duty to read.
 
 
 15
 Plaintiff presented no evidence that either defendant saw the article or was aware of its existence; the testimony was to the contrary. Plaintiff does not show why defendants had a duty to read the article. That article, or a similar article, was not, Gilbert testified, mentioned in any of the regular training programs for sheriffs that he was required to attend. The law does not require jail officials to keep up with the latest literature in the social sciences. The article or opinions of plaintiff's expert cannot be considered part of the information available to the defendants when they acted as they did.
 
 
 16
 More important, the law was unclear on whether the presence of some of the expert's "factors" which might indicate that a prisoner is in a category of persons more likely to commit suicide than the general population was sufficient to create a duty to take special suicide precautions. See Roberts v. City of Troy, 773 F.2d 720, 723, 725 (6th Cir.1985) (plaintiff's argument that proper screening at jail would have shown that decedent fit profile of high suicide risk in lockup insufficient to establish deliberate indifference under any definition); Estate of Cartwright v. City of Concord, 618 F.Supp. 722, 728 (N.D.Cal.1985), aff'd, 856 F.2d 1437 (9th Cir.1988) (jailers had no reason to believe decedent was suicidal despite fact that he was under influence of alcohol or drugs and that he had made a remark, ostensibly in jest, to jailers about killing himself).
 
 
 17
 The deliberate indifference standard is met only if there were a "strong likelihood, rather than a mere possibility," that self-infliction of harm would result. State Bank of St. Charles v. Camic, 712 F.2d at 1146; Danese v. Asman, 670 F.Supp. 709, 718 (E.D.Mich.1987); Matje v. Leis, 571 F.Supp. at 930; Guglielmoni v. Alexander, 583 F.Supp. at 826. See also Thompson v. County of Rock, 648 F.Supp. 861, 871 (W.D.Wis.1986) (same standard applied in search and seizure case); Vun Cannon v. Breed, 391 F.Supp. 1371 (N.D.Cal.1975) (similar standard applied in inmate violence case). In the circumstances, a reasonable jailer could have believed that it was constitutional to behave as Blackshear and Gilbert behaved; put differently, it was by no means settled that their acts constituted deliberate indifference to a potential suicide where no suicide had been attempted or threatened.
 
 
 18
 Plaintiff attempts to broaden defendants' constitutional duties by contending that defendants violated state laws and regulations on housing of juveniles in adult jails[5], which plaintiff argues give rise to a right of juvenile inmates to certain housing conditions. In Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court rejected this argument when it held that officials sued for constitutional violations lose no immunity simply because their conduct violates some state statute or regulation. The Court rejected the notion, implicit in plaintiff's brief, that official conduct that contravenes a state statute or regulation is not "objectively reasonable" because officials are ordinarily expected to conform to these legal norms. Id. at 193, 104 S.Ct. at 3018; see Clark v. Evans, 840 F.2d at 883 (although defendant jailer had notice that prison security measures were inadequate under state law, defendant was immune because court found "nothing sufficient to place defendant ... on notice that at the time of [plaintiff's] death the status of the [security measures] would violate [plaintiff's] constitutional rights.")
 
 
 19
 In jail suicide cases, courts have recognized that regulations cannot "supply certainty to an uncertain rule of constitutional law." Gagne v. City of Galveston, 805 F.2d 558, 560 & n. 2 (5th Cir.1986). In Gagne, the court held that a police officer was immune even though he violated a departmental rule by failing to remove the belt from a detainee who then used the belt to hang himself. Id. at 558. In Roberts v. City of Troy, 773 F.2d at 722, that violation of state monitoring regulations may have been a contributing cause of death in a suicide case was insufficient to establish deliberate indifference. The Seventh Circuit observed that officers in charge of an intoxicated and violent detainee who committed suicide could not be characterized as deliberately indifferent "[e]ven if the defendants disregarded one or more of their established procedures, such as checking the cells every hour or effectively monitoring....," because the officers had no knowledge that the detainee was a suicide risk. State Bank of St. Charles v. Camic, 712 F.2d at 1146.
 
 
 20
 Finally, plaintiff tries to substantiate deliberate indifference by arguing that Gilbert failed to staff the jail adequately. See generally Anderson v. City of Atlanta, 778 F.2d 678 (11th Cir.1985). The evidence to support this position--that the jail had fewer officers than were needed, that Gilbert knew it was understaffed and decided not to increase the staff, and that Gilbert knew or should have known that the consequence of inadequate staffing would be an inmate's suicide--is colorable at best. See id. at 686. Far more important, the law was by no means settled that the undisputed level of staffing at this jail, or in substantially similar circumstances, was understaffing or that this understaffing would amount to deliberate indifference.
 
 
 21
 Because no court had ever held that acts materially similar to what these defendants did--leave a seemingly sleeping juvenile inmate, who had never threatened or attempted suicide and who had never been considered a suicide risk, in a secure cell for forty-five minutes with another sleeping juvenile--constituted deliberate indifference to the inmate's safety from self harm, we believe that a reasonable officer in each of defendants' positions could have believed that he was acting consistently with the Constitution. We therefore conclude that these individual defendants are entitled to immunity. We reverse the judgment of the district court denying these defendants summary judgment and remand for the district court to enter summary judgment in favor of defendants in their individual capacities.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Plaintiff makes no allegation that Molbert was in danger of serious physical harm from adult inmates at the jail. The subject of the adult inmates' threats was what would happen to Molbert when he got to state prison. In addition, we note that a petitioner must allege more than that he has been subjected to "verbal taunts.... [h]owever distressing" in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights. Ballard v. Elsea, 502 F.Supp. 105, 106-07 (W.D.Wis.1980)
 
 
 [2]
 While we conclude that the state laws in this case give rise to no procedural due process claims, we also note that even if we were to find that these state laws create a protected liberty interest, the contours of that interest were by no means "clearly established" for purposes of qualified immunity at the time of Molbert's death. See Lucas v. Hodges, 730 F.2d 1493, 1506-07, vacated as moot, 738 F.2d 1392 (D.C.Cir.1984)
 
 
 [3]
 Actually, we know of only one reported opinion anywhere in which a court suggested that deliberate indifference could exist in the absence of a prior threat of or attempt at suicide: In that case, the inmate was clearly intoxicated and had been acting extremely violently shortly before his suicide. Brewer v. Perrin, 132 Mich.App. 520, 349 N.W.2d 198 (1984). This single opinion does not clearly establish the law applicable to our case
 
 
 [4]
 Plaintiff also contends that because Molbert evidently requested an appointment with the psychologist and there was no record that he had seen one, he was denied basic medical care or, at least, this should have put defendants on notice that he was a potential suicide risk. For inmates to request to see a jail psychologist is not in itself unusual. See generally Deposition of Nancy Gillis, Plaintiff's Exhibit 47. Plaintiff presented no evidence that there was anything unusual about Molbert's request. To defeat summary judgment, plaintiff must show that there is a genuine issue for trial; if the evidence is merely colorable, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the fact that four days had passed since the request and Molbert had apparently not seen the psychologist does not establish deliberate indifference. See Partridge, 751 F.2d at 1454 (delay or even denial of medical care does not necessarily show deliberate indifference); Waldrop v. Evans, 681 F.Supp. 840, 858-60 (M.D.Ga.1988) (mental health director's decision to wait almost two weeks to schedule psychiatric evaluation for inmate after inmate had gouged out eye did not demonstrate deliberate indifference). The jail psychologist ordinarily made rounds only once a week. Deposition of Nancy Gillis at 7. There was no evidence that the inmate, Correctional Officer, or jail nurse had characterized the request as an emergency. Id. at 10-11, 13-15, 16. There is nothing about the failure to get Molbert to the psychologist in these circumstances "so grossly incompetent, inadequate, or excessive as to shock the conscience" or "to evidence intentional maltreatment or a refusal to provide essential care." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir.1986)
 
 
 [5]
 Florida law required sight and sound separation of juvenile and adult prisoners. See Fla.Stat. sec. 39.032(5)(c) (1985); Fla.Admin.Code Rule 33-8.11(15) (1985). In the Okaloosa County Jail, juveniles are housed in separate cell blocks; but adult prisoners pass by juveniles' cells on the way to meals. There was also deposition testimony that some of the adult inmates in their cells could hear and be heard by the juveniles. Florida law also requires observation of juvenile prisoners at intervals not exceeding every fifteen minutes. See Fla.Admin.Code Rule 33-8.04(4) (1985)