Margaret SANDERS, As Administratrix of the Estate of Darrell L. Sanders;  Margaret Sanders and Damon Sanders, Plaintiffs-Appellees,

v.

Hollis HOWZE, Individually and in His Official Capacity;  Sam Law, Individually and in His Official Capacity, et al., Defendants-Appellants.

No. 98-8512.

United States Court of Appeals,

Eleventh Circuit.

June 14, 1999.

Appeal from the United States District Court for the Middle District of Georgia. (No. 1:95-CV-21-1-WLS), W. Louis Sands, Judge.

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

DUBINA, Circuit Judge:

Appellants Hollis Howze ("Howze"), Sam Law ("Law"), and Tim Cosby ("Cosby") appeal the district court's order denying their motion for summary judgment based on qualified immunity.  We reverse.

I. *BACKGROUND FACTS*

Margaret Sanders, as administratrix of the estate of Darrell L. Sanders ("Sanders"), commenced this suit alleging that the defendants violated Sanders's rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Police arrested and placed Sanders in the Dougherty County, Georgia, jail on or about July 6, 1989.  On or about August 19, 1989, Sanders removed a razor blade from a disposable razor and cut his left wrist.  In accordance with jail policies and procedures, prison officials immediately transported Sanders to the Emergency Room of Phoebe Putney Memorial Hospital Crisis Center for treatment of his wound and for evaluation.  On the same day, following the physician's exam, an officer from the County Sheriff's Department transported Sanders to Southwestern State Hospital in Thomasville, Georgia, for a psychological evaluation.  Sanders returned to the Dougherty County jail on October 6, 1989.  Upon his return, the jailers placed Sanders in general population.  Two days later, Sanders used a pencil to reopen his left wrist injury, and in accordance with jail policies and procedures, the guards immediately transported

him to the Emergency Room of the Phoebe Putney Memorial Hospital Crisis Center for treatment of his wound. After doctors stapled Sanders's wound at the Emergency Room, they released him back to the Dougherty County jail the same day and placed him in an isolation cell near the jailer's office to prevent his access to razors, pens, pencils, or other such items available to the general population inmates and with which Sanders could reinjure himself.

The next day, on October 9, 1989, Sanders removed a staple from his left wrist wound, and in accordance with jail policies and procedures, the guards immediately transported him, for the third time, to the Emergency Room of the Phoebe Putney Memorial Hospital Crisis Center for retreatment of his wound. After being kept at the hospital overnight, doctors examined Sanders and released him to the Dougherty County jail, where the jailers again placed him in an isolation cell.

The next day, Dougherty County Sheriff's Department personnel transported Sanders to Southwestern State Hospital in Thomasville, Georgia. On October 31, 1989, Sanders returned to the Dougherty County jail. Upon his return, the guards placed Sanders in an isolation cell near the jailer's office and issued him only socks, jogging pants, a shirt, and a bed sheet. The personnel of the Southwestern State Hospital gave no special instructions concerning Sanders's care; in fact, Dr. Loren Hildebrandt ("Dr. Hildebrandt") of Southwestern State Hospital specifically advised Howze, the chief jailer of the Dougherty County jail, that absolutely no precautions were needed concerning Sanders, but that Howze could implement whatever, if any, precautions he felt necessary. (R1-29-112, 119). Howze, out of an abundance of caution, ordered Sanders placed in an isolation cell to keep him away from exposure to razor blades, pens, pencils, and other objects available in the open population of the jail.

On November 3, 1989, Assistant District Attorney Johnnie M. Graham of the Dougherty Judicial Circuit filed a petition with the Superior Court of Dougherty County alleging that Sanders might be suffering from mental illness to the extent that he was unable to stand trial. The petition sought a mental capacity evaluation by the Department of Human Resources through its authorized agent. On that same day, Judge Asa D. Kelley of the Dougherty Judicial Circuit signed an order granting the request in the petition and

ordering the sheriff to arrange for a psychiatric evaluation to be conducted by the Forensic Services staff of Southwestern State Hospital at a place to be determined by the hospital's staff. During all relevant times, Dr. Hildebrandt conducted such psychiatric evaluations on a weekly basis at the Dougherty County jail. Before Dr. Hildebrandt could conduct Sanders's psychiatric evaluation, however, Deputy Sheriff Law found Sanders dead on November 8, 1989, at 6:05 a.m., in his isolation cell, where he had hung himself from the light fixture with the bed sheet.

Law and Cosby were the jailers on duty between midnight and 8:00 a.m. on the morning of Sanders's death. Law and Cosby did not detect Sanders's death for four to six hours after it occurred despite jail policy that the lights in isolation cells remain on at all times and despite jail policy that all inmates in isolation, including suicidal inmates, be visually monitored every 30 minutes.

In denying the defendants' motion for summary judgment, the district court found that there existed material questions of fact as to whether Howze, Law and Cosby were deliberately indifferent to Sanders's taking his own life, and therefore, whether they are entitled to qualified immunity. Relying on *Edwards v. Gilbert,* 867 F.2d 1271 (11th Cir.1989), the district court reasoned that at the time of Sanders's suicide, the clearly established law was that defendants will not be deliberately indifferent to a prisoner's taking of his own life.

## II. *ISSUE*

Whether the district court erred in denying the defendants' motion for summary judgment based on qualified immunity.

## III. *STANDARD OF REVIEW*

The issue of a government official's qualified immunity from suit presents a question of law to be resolved *de novo* on appeal. *See Jordan v. Doe,* 38 F.3d 1559, 1563 (11th Cir.1994).

This court reviews *de novo* the denial of summary judgment based on qualified immunity grounds. *See Pickens v. Hollowell,* 59 F.3d 1203, 1205 (11th Cir.1995).

## IV. *DISCUSSION*

The only case decided in this circuit prior to November 8, 1989, concerning a suicidal jail inmate, *vis a vis* his jailers is *Edwards,* 867 F.2d 1271. The district court relied on *Edwards* for its conclusion that at the time of Sanders's suicide on November 8, 1989, "the clearly established law was that defendants will not be deliberately indifferent to a prisoner's taking of his own life." (R1-43-4). But in *Edwards,* this court reversed the denial of summary judgment to jail officials on qualified immunity grounds holding that the *Edwards* defendants' actions did not constitute deliberate indifference under clearly established law. *See Edwards,* 867 F.2d at 1276. Moreover, we stated in *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1400 (11th Cir.1994), a 1991 jail suicide case, that *Edwards* could not have established, clearly or otherwise, that the actions of the defendants in *Belcher* constituted deliberate indifference to a prisoner's taking of his own life. *See also Haney v. City of Cumming,* 69 F.3d 1098, 1102-1103 (11th Cir.1995). It is clear from *Belcher* that *Edwards* did not clearly establish any behavior as deliberately indifferent.[1]

Qualified immunity protects government officials performing discretionary functions from civil trials and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *See Lassiter v. Alabama A & M University Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994)(en banc). The defense embodies an objective reasonable standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then

---

[1]Because the parties do not raise or brief the issues, we specifically decline to address whether there is sufficient evidence of subjective intent to support a jury finding of deliberate indifference (i.e., the underlying constitutional tort) and whether *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), affects the qualified immunity analysis in certain deliberate indifference cases. *Compare Adams v. St. Lucie County Sheriff's Dept.,* 998 F.2d 923 (11th Cir.1993) (en banc) (adopting the dissenting opinion of Judge Edmondson in *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1573-79 (11th Cir.1992)) (stating qualified immunity protected officers who intentionally used a "deadman roadblock" because it was not clearly established that such a roadblock created a Fourth Amendment seizure), *with Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1186 (11th Cir.1994) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law."). *See also Lancaster v. Monroe County,* 116 F.3d 1419, 1426 n. 7 (11th Cir.1997) (calling *Hill*'s statements "dicta" but questioning defendants' position "that if there is no prior decision establishing that alcohol withdrawal is a serious, urgent medical problem, they are entitled to qualified immunity, even if their conduct did constitute deliberate indifference").

existing law that only an official who was incompetent or who knowingly was violating the law would have committed them. *See Belcher,* 30 F.3d at 1395. Qualified immunity thus represents the rule, rather than the exception: "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter,* 28 F.3d at 1149. Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a right to be "clearly established," previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1366 (11th Cir.1998).

The core qualified immunity issue in this case is whether, prior to November 8, 1989, case law of this circuit had "clearly established" the federal statutory or constitutional rights of a suicidal jail inmate *vis a vis* his jailers in a concrete factual context so as to make it obvious to a reasonable jailer that his actions violate federal law. In its memorandum opinion, the district court makes two statements regarding what it contends to be "clearly established law":

(1)  There can be no question, however, that at a minimum the clearly established law was that defendants will not be deliberately indifferent to a prisoner's taking of his own life. *Edwards v. Gilbert,* 867 F.2d at 1274. (R1-43-4)

(2)  The point of qualified immunity is to allow government officials to make *reasonable* discretionary decisions without fear of reprisal, not just any discretionary decision. Even when left to their own discretion, in other words when the court has not clearly ruled on a specific action, defendants are required to be reasonable and not be deliberately indifferent. This was the clearly established law at the time of Sanders' suicide. (R1-43-6)

We disagree with the district court's analysis. Indeed, the statements made in the district court's opinion are mere conclusory statements or "sweeping propositions of law" which instruct a government actor not to be "deliberately indifferent" without defining that term or providing the requisite guidance to him for

stripping him of qualified immunity. "For purposes of qualified immunity, an abstract mandate to act 'with care' or 'reasonably' is too vague." *Edwards v. Gilbert,* 867 F.2d at 1273. Generalities are just not helpful. *Id.* at 1273.

To overcome the defendants' qualified immunity, plaintiffs must establish that the defendants' conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable." *Belcher* at 1395. Instead, the plaintiffs must draw the court's attention toward a more particularized and fact-specific inquiry showing that there existed sufficient case law establishing the contours of their constitutional rights that the unlawfulness of the defendants' conduct would have been apparent to a reasonable official in the same circumstances. *See id.* at 1395. If no such case law exists, then the defendants are entitled to qualified immunity. *Id.*

When considering whether the law is clearly established, the specific facts of the cases relied upon as precedent are important. *See Lassiter* at 1149-50. The facts need not be the same as the facts of the immediate case but they do need to be materially similar. *See Lassiter* at 1150. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases. *See id.* "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.*

In the present case, it is the plaintiffs' burden to show that binding case law had been decided in this circuit before November 8, 1989, that factually defined the contours of the suicidal inmate's rights *vis a vis* his jailers such that the acts of Howze, Law and Cosby were so obviously wrong, in the light of pre-existing law, that the jailers were either plainly incompetent or knowingly violated the law. *Belcher,* 30 F.3d at 1395.

In our view, the holding of *Belcher* similarly compels the same holding in the present case: the law was not "clearly established" in 1989 regarding suicidal inmates *vis a vis* their jailers. In *Belcher* we held:

After reviewing the case law at the time of Mr. Belcher's death, we conclude that it [i.e., the case law at the time of Mr. Belcher's death] did not clearly establish that measures materially similar to those taken by [the defendants] to prevent Mr. Belcher from committing suicide, were so inadequate as to constitute deliberate indifference. Therefore, these defendants are entitled to qualified immunity from suit in their individual capacities.

*Belcher,* 30 F.3d at 1401.

In other words, *Belcher* held that, in resisting a motion for summary judgment asserting qualified immunity, a plaintiff must show or prove that binding, pre-existing case law existed at the time the alleged constitutional violation occurred, which so clearly established the parameters of the plaintiff's rights that the defendant must have been intentionally violating those rights or must have been hopelessly incompetent. In *Belcher* we also held that no such pre-existing case law existed on November 8, 1989, regarding suicidal prisoners *vis a vis* their jailers which clearly established what preventive measures were required to be taken by the jailers. Therefore, because the plaintiffs could not prove or show that the preventive measures actually taken by the defendants (whatever those measures were) violated clearly established law, the defendants were entitled to qualified immunity from suit in their individual capacities.

In summary, for the defendants in the present case not to be entitled to qualified immunity from suit in their individual capacities, this circuit's case law requires the plaintiffs to show that pre-existing case law clearly established the suicide prevention measures taken by Howze, Law and Cosby as being so inadequate as to constitute deliberate indifference. As pointed out in this opinion, no Eleventh Circuit case law, not even *Edwards,* so held prior to November 8, 1989. Accordingly, we reverse the district court's order denying Howze, Law and Cosby qualified immunity, and remand this case with directions that the district court grant qualified immunity to these defendants in their individual capacities.

REVERSED and REMANDED.