[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11648

Non-Argument Calendar

_____

ERIC WATKINS,

                                        Plaintiff-Appellant,

*versus*

RANDY AZAEL,
Correction Deputy #13263,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-62236-AMC

_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Eric Watkins, a former detainee at the Broward County Main Jail, brought this pro se complaint under 42 U.S.C. § 1983 against defendant Randy Azael, a deputy at the jail. Watkins's complaint alleged that on January 9, 2016 Azael several times verbally threatened to rape him, in violation of Watkins's rights under the Fourteenth Amendment. The district court (1) granted defendant Azael's motion for summary judgment based on qualified immunity, and (2) denied Watkins's motion for leave to amend his complaint to add new state law claims.

After review, we conclude that Azael is entitled to qualified immunity on Watkins's § 1983 Fourteenth Amendment claim because Watkins points to no clearly established law that a corrections officer's verbal threats of rape rise to the level of a Fourteenth Amendment violation. Further, the district court did not abuse its discretion in denying Watkins's motion to amend his complaint given that it was filed six months after the deadline set in the district court's scheduling order and while Azael's summary judgment motion was already pending.

## I.  BACKGROUND FACTS

At summary judgment, defendant Azael's Statement of Facts was drawn from Watkins's verified amended complaint. In other words, for summary judgment purposes, defendant Azael did not dispute Watkins's version of events, which we recount below.

## A. Azael Verbally Harasses Watkins in December 2015

In early December 2015, Watkins arrived as a pretrial detainee at the Broward County Main Jail, where defendant Azael worked as a correctional deputy. Shortly thereafter, Azael appeared at Watkins's cell "a couple of times" and made "homosexual gestures and comments" to Watkins. Sometimes Watkins ignored Azael, but other times Watkins responded by cursing at Azael, which led to a "verbal confrontation" between the two men.

On December 26, 2015, defendant Azael opened the door to Watkins's cell while Watkins was sleeping. When Watkins awoke, Azael told Watkins he was a handsome man and made "homosexual gestures" at Watkins. Watkins became angry, cursed at Azael, and told Azael "to get his faggot ass from in front of [his] cell." Azael became angry, told Watkins that he was becoming aggressive, and put Watkins in "lock down" for the whole day as punishment.

The next day, plaintiff Watkins filed an administrative complaint regarding the incident, but no investigation was conducted. Watkins began to worry that Azael's verbal harassment might become physical sexual harassment.

## B. January 9, 2016: Azael Repeatedly Threatens to Rape Watkins

On January 9, 2016, Watkins was sitting in the jail's day room when Azael, who was conducting cell checks, entered and ordered Watkins to go to his cell. As Watkins complied and began walking up the stairs to his cell, Azael "grab[bed] [Watkins's] forearm."

Watkins pulled his arm away and continued up the stairs and into his cell.

By this time, Azael was "in a rage of anger." Azael reached for his mace (but apparently did not use it) and slammed Watkins's cell door shut. Azael also repeatedly threatened to rape Watkins, "while showing [Watkins] gestures of how he intend[ed] to rape [him]." Azael stormed off, still threatening that he intended to rape Watkins.

Extremely frightened by Azael's threats, Watkins began repeatedly kicking his cell door and loudly requesting to speak to the shift sergeant. Before the shift sergeant arrived, Azael continued to walk by Watkins's cell during cell checks and to threaten to rape Watkins.

When the shift sergeant finally arrived at the end of the day on January 9, he was accompanied by Azael. Watkins told the shift sergeant that Azael had repeatedly threatened to rape him. The shift sergeant responded that he did not believe Watkins and asked Watkins to shake Azael's hand. When Watkins refused, the shift sergeant and Azael left without doing anything to protect Watkins from Azael.

From January 9 until Watkins's release on January 26, there is no evidence (or even an allegation) that Azael continued to threaten Watkins or ever acted on his past threats. Nonetheless, Watkins avers that after January 9, he was "in a state of fright, terror, nervousness, anxiousness and paranoia" because of Azael's earlier threats. Watkins lost his appetite, had sleepless nights, was

afraid to shower or exercise, and was constantly alert to the guards' movements for fear that Azael would carry out his threat to rape him.

## II.  PROCEDURAL HISTORY

### A.  Motion for Leave to File Complaint Asserting an Eighth Amendment Claim Against Azael

As background, in 2019, the district court deemed Watkins a vexatious litigant and entered a sanctions order enjoining Watkins from initiating any new action in the Southern District of Florida without prior court approval.  This Court affirmed the district court's sanctions order given that under the pre-approval filing injunction, the district court screens out frivolous and malicious claims and allows arguable claims to go forward.  *Watkins v. Dubreuil*, 820 F. App'x 940, 948 (11th Cir. 2020).  Accordingly, Watkins first had to file, and did file, on December 26, 2019, a pro se motion for leave to file a § 1983 complaint asserting an Eighth Amendment claim against Azael.

On January 2, 2020, the district court denied leave, explaining that the Eighth Amendment applies only to convicted prisoners and not to pretrial detainees like Watkins and that Watkins's lawsuit was malicious.  Watkins did not appeal this ruling.

## B.  Motion for Leave to File Complaint Asserting a Fourteenth Amendment Claim Against Azael

On January 6, 2020, Watkins filed a pro se motion for leave to file a § 1983 complaint asserting a Fourteenth Amendment claim against Azael based on his sexual harassment of, and threats to rape, Watkins.  The district court denied Watkins's motion for leave.  The district court recognized that Watkins was now asserting a Fourteenth Amendment claim but concluded that "the other reasons for the denial stated in the Court's January 2, 2020 Order . . . remain valid grounds to deny the request."

On appeal, this Court vacated the district court's denial of Watkins's motion for leave and remanded with instructions to docket his proposed complaint.  *In re Eric Watkins Litig.*, 829 F. App'x 428, 430 (11th Cir. 2020).  In so doing, this Court observed that "Azael's alleged conduct of directing demeaning homosexual comments and gestures at Watkins, though unacceptable and unrelated to any legitimate governmental objective, is the type of verbal harassment or taunting that is not actionable under the Eighth or Fourteenth Amendments."  *Id.* at 431.

This Court acknowledged, however, that "Watkins's allegation that Azael angrily and repeatedly threatened to rape him" was "conduct objectively more serious than mere vulgar words or gestures" and that Watkins had alleged "severe mental distress."  *Id.*  This Court noted that other circuits had suggested "that verbal threats, under certain circumstances, may be sufficient to state a constitutional claim."  *Id.*  We concluded "that Watkins

ha[d] presented an 'arguable' constitutional claim" that "he should have been permitted to file in federal court." *Id.*

## C. Amended Federal Complaint and Notice of State Court Action

On remand, the district court docketed Watkins's proposed § 1983 complaint. Shortly thereafter, the district court granted Watkins's motion to file an amended § 1983 complaint. Watkins's amended § 1983 complaint, filed February 26, 2021, was substantially similar to his original January 6, 2020 complaint.

In a pre-answer notice, defendant Azael advised the district court that on January 6, 2020, Watkins filed a civil suit against Azael in Florida state court. Azael attached copies of Watkins's original and amended state court complaints. In his amended state court complaint, Watkins alleged Florida law claims of assault and intentional infliction of emotional distress based on the same facts and circumstances alleged in Watkins's federal complaint. In his federal court response to Azael's notice, Watkins acknowledged that his federal and state cases were "factually . . . identical" but argued they were not duplicative because they raised different causes of action.

On April 5, 2021, Azael also filed a pre-answer motion to dismiss Watkins's action with prejudice, arguing, *inter alia*, that Watkins had improperly split duplicative claims against Azael in his federal and state court actions.

Shortly thereafter, on May 3, 2021, Azael withdrew his motion to dismiss. Azael's pleading: (1) acknowledged that

Watkins's federal action was filed first; (2) advised that attempts to reach a resolution by consolidating both actions in the federal case had been unsuccessful; and (3) proposed that Watkins voluntarily dismiss his state court action without prejudice and file an unopposed motion to amend his federal complaint to incorporate his state law claims. Watkins, however, continued to pursue his two-action strategy.

## D. Scheduling Order and Motion for Summary Judgment

The district court entered a scheduling order that required the parties: (1) to amend their pleadings by June 4, 2021; (2) to complete discovery by December 30, 2021; and (3) to file any summary judgment motion by January 25, 2022.

On November 19, 2021, Azael filed a motion for summary judgment based on qualified immunity. Azael argued Watkins could not demonstrate that a pretrial detainee's Fourteenth Amendment right to be free from repeated threats of rape was clearly established at the time of the alleged misconduct. Watkins opposed the motion on numerous grounds.

## E. Untimely Motion for Leave to Amend Complaint

On December 28, 2021, before the district court could rule on the summary judgment motion, Watkins filed a motion for leave to amend his pleadings. Watkins's motion was well outside the June 4, 2021 deadline for amendments. Yet, Watkins sought to add the state law claims of assault and intentional infliction of emotional distress previously raised in his state court action.

Watkins averred that the state court had dismissed that action on grounds of duplicative claims splitting.

The district court denied Watkins's motion to amend his complaint, concluding Watkins had not shown good cause under Federal Rule of Civil Procedure 16(b). The district court stressed that: (1) the case was over two years old; (2) Watkins was put on notice of his duplicative-claims defect by Azael's pleadings but "chose to proceed in different courts until receiving an unfavorable ruling in state court"; (3) Watkins did not move to amend his complaint until six months after the scheduling order's June 4, 2021 deadline; and (4) Azael's motion for summary judgment was now fully briefed.

### F.  District Court's Order Granting Summary Judgment

On April 5, 2022, the district court granted summary judgment to Azael based on qualified immunity. The district court found that at the time of the alleged rape threats, Azael was performing a job-related function and acting within his discretionary authority.

Turning to the alleged constitutional violation, the district court construed Watkins's allegations as tantamount to an excessive force claim under the Fourteenth Amendment. Although expressing skepticism that Azael's verbal threats constituted excessive force, the district court concluded Watkins had not shown Azael's conduct: (1) violated a "clearly established" right through binding case law with materially indistinguishable facts; or (2) was so egregious that it violated a constitutional right of

"obvious clarity" even in the absence of case law.  Watkins timely appealed.

### III.  MOTION TO AMEND

On appeal, Watkins pro se argues the district court abused its discretion by refusing to allow him to amend his complaint to add his state law claims against Azael.

Under Rule 15(a), a plaintiff may amend his complaint once as a matter of course within 21 days of serving it or within 21 days after the defendant's service of either the answer or a motion under Rule 12(b), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Thereafter, a plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) instructs courts to "freely give leave when justice so requires."  *Id.*  Nevertheless, the district court may deny leave to amend on numerous grounds, including undue delay.  *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).

Once the district court enters a scheduling order limiting the time to amend pleadings, that schedule may be modified only for "good cause" and with the district court's consent.  Fed. R. Civ. P. 16(b)(4).  Thus, a plaintiff seeking leave to amend his complaint after the scheduling-order deadline must show "good cause" under Rule 16(b).  *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241

22-11648          Opinion of the Court          11

(11th Cir. 2009).  A plaintiff's lack of diligence in pursuing a claim precludes a finding of good cause.  *Id.* at 1241 & n.3.[1]

Here, the district court did not abuse its discretion in denying as untimely Watkins's motion for leave to amend his complaint.  Watkins amended his complaint once as a matter of right.  After Azael filed his answer, Watkins needed either Azael's consent or the district court's leave to amend again.  *See* Fed. R. Civ. P. 15(a)(2).  And because Watkins's motion was filed over six months after the scheduling order's June 4, 2021 deadline for amendments, Watkins was required to show good cause for his delay under Rule 16(b).

The district court concluded, and we agree, that Watkins failed to demonstrate good cause for missing the scheduling order's deadline.  The record shows Watkins's lack of diligence.  First, Watkins knew of the information supporting his proposed state law claims long before the scheduling order's deadline, as evidenced by the fact that he had already asserted those same state law claims in his state court action.  *See S. Grouts & Mortars, Inc.*, 575 F.3d at 1241 n.3; *Sosa*, 133 F.3d at 1419.  Indeed, Watkins filed his state court action asserting the state law claims on January 6, 2020, the same day he filed his motion for leave to file his original

---

[1]We review for abuse of discretion a district court's denial of a motion for leave to amend a complaint.  *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011).  Likewise, we review for abuse of discretion a district court's enforcement of its scheduling order.  *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

complaint in this federal action. Yet, Watkins did not file his motion to amend until December 28, 2021, almost two years later.

Second, Watkins was put on notice of the potential pitfalls of proceeding in parallel actions by Azael's pleadings discussing duplicative claim splitting. Azael's pleadings even recounted how his counsel had unsuccessfully proposed to Watkins that he dismiss his state action without prejudice and file in his federal action an unopposed motion to amend his complaint to add the state law claims. Yet, Watkins took no steps to do so before the June 4, 2021 deadline expired.[2] Instead, Watkins waited another six months and only after Azael's motion for summary judgment was fully briefed.

Under the totality of the circumstances, we cannot say the district court abused its discretion.

## IV.  QUALIFIED IMMUNITY

Watkins next argues that the district court erred in granting summary judgment on his Fourteenth Amendment claim against Azael on qualified immunity grounds.[3]

---

[2] There is no merit to Watkins's contention that he could not amend his federal complaint until after the state court dismissed his state court action as impermissibly duplicative. As Azael's counsel proposed, Watkins was free to voluntarily dismiss his state court action and move to amend his federal complaint to add the state law claims.

[3] We review de novo a district court's grant of summary judgment based on qualified immunity. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017). At the summary judgment stage, we construe all facts and draw all reasonable inferences in favor of the plaintiff as the non-moving party and use that version of the facts to determine whether the defendant is entitled to

Qualified immunity protects a government official sued in his individual capacity from civil damages so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021) (quotation marks omitted). To seek qualified immunity, the government official must show that he was "acting within the scope of his 'discretionary authority' when the allegedly wrongful acts occurred." *Id.* If the government official does so, "the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Id.*

## A. Scope of Azael's Discretionary Authority

As to Azael's discretionary authority, Watkins contends that jail guards are not allowed to threaten to rape a detainee under any circumstances and such an act is not related to any legitimate state objective.

To demonstrate that he acted within the scope of his discretionary authority, Azael "was required to show that he acted: '(1) . . . pursuant to the performance of his duties, and (2) within the scope of his authority.'" *Benison*, 5 F.4th at 1230 (ellipsis in original) (quoting *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018)). "Put differently, [Azael] was required to show that he was (a) performing a legitimate job-related function (that is,

---

qualified immunity. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013); *Penley v. Eslinger*, 605 F.3d 843, 948-49 (11th Cir. 2010).

pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1230-31 (quotation marks omitted).

Here, when Azael allegedly made the rape threats, he was on duty as a correctional officer at the jail and was conducting a cell check, a legitimate job-related function.  During the cell check, Azael directed Watkins to return to his cell, escorted Watkins from the day room to his cell, secured Watkins in the cell, and then continued with the cell check, all means that were within Azael's power to utilize to carry out the cell check.

Watkins's argument—that Azael was not authorized to make rape threats as part of those job duties—misunderstands the nature of the discretionary authority inquiry.  "The inquiry is not whether it was within the defendant's [discretionary] authority to commit the allegedly illegal act.  Framed that way, the inquiry is no more than an 'untenable' tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

Rather, "[i]n applying each prong of the [discretionary authority] test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  In other words, we "consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint." *Id.*; *Benison*, 5 F.4th at 1231 (explaining that a proper "framing of the inquiry" must "strip out

the allegedly illegal conduct"). When we do so here, it is readily apparent from the record that Azael was acting within his discretionary authority as a corrections officer at the jail when he threatened Watkins during the cell check.

## B. Clearly Established Right

Watkins next contends that he met his burden to show that Azael violated his clearly established Fourteenth Amendment right as an inmate to be free from a corrections officer's threats of rape. Once the defense of qualified immunity has been properly raised, the plaintiff bears the burden of showing: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815 (2009). We have discretion to affirm a grant of qualified immunity on either prong or both. *Id.* at 236, 129 S. Ct. at 818; *see also Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021).

Even assuming *arguendo* that Watkins has shown that Azael's rape threats violated the Fourteenth Amendment, Azael is still entitled to qualified immunity because Watkins failed to demonstrate the constitutional violation was clearly established at the time Azael made the threats in 2016. A right is clearly established if "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he [was] doing [was] unlawful." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 589 (2018) (quotation marks omitted). To meet this "demanding standard," "existing law must

have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.*

A plaintiff can show that a constitutional right was clearly established in three ways: (1) "he can point us to a materially similar case that has already been decided"; (2) "he can point us to a broader, clearly established principle that should control the novel facts of the situation; or (3) he can show that the conduct involved "so obviously violate[d] the Constitution that prior case law is unnecessary." *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019) (cleaned up). "We look only to binding precedent at the time of the challenged conduct—that is, the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state" to see if the right was clearly established. *Id.* (quotation marks omitted).

We now turn to Watkins's particular constitutional claim.

## C. Fourteenth Amendment Claim

Claims involving the mistreatment of pretrial detainees, like Watkins, are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to convicted prisoners. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Although the source of the right differs, pretrial detainees, like prisoners, have a right to be free from excessive uses of force by guards. *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019). Because the district court's order and the parties' appellate briefs analyzed

Watkins's Fourteenth Amendment claim within the excessive force framework, we do as well.

Nonetheless, in Watkins's prior appeal, this Court concluded that Azael's alleged demeaning homosexual comments and gestures were the type of verbal harassment or taunting that is not actionable under the Fourteenth Amendment (or even the Eighth Amendment). *See In re Eric Watkins Litig.*, 829 F. App'x at 431. Thus, we focus our analysis on Azael's alleged angry and repeated threats to rape Watkins, which are "objectively more serious than mere vulgar words or gestures," and allegedly caused Watkins severe mental distress. *See id.*

Neither the Supreme Court nor this Court in a published opinion has determined whether a correctional officer's *verbal* threats to physically harm an inmate alone violate the Eighth Amendment or the Fourteenth Amendment. In dicta, this Court has said that "verbal taunts. . . . [h]owever distressing" cannot establish a claim that guards violated the Eighth Amendment. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) (alterations in original). In an unpublished decision, this Court has gone further and concluded that prison officers' threats that were never carried out were insufficient to state a constitutional violation. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008).

More recently (and after Azael's 2016 conduct alleged here), this Court has held that prisoners have an Eighth Amendment right to be free from sexual assault by corrections officers and have

defined sexual assault to include various types of physical contact of a sexual nature. *See DeJesus v. Lewis*, 14 F.4th 1182, 1195-98 (11th Cir. 2021). Yet, in doing so, we have left open "whether non-physical contact can constitute 'sexual assault' for purposes of establishing an excessive-force claim under the Eighth Amendment." *Id.* at 1197 n.14.

Elsewhere, at least three other courts have concluded that threats, in at least some situations, may be sufficient to state an Eighth Amendment claim. *See, e.g.*, *Irving v. Dormire*, 519 F.3d 441, 448-50 (8th Cir. 2008) (involving correctional officer's ongoing threats to kill a prisoner and to have him killed or beaten by other prisoners coupled with the officer's unsuccessful efforts to pay other prisoners to assault him and to arm one of them with a razor blade); *Chandler v. D.C. Dep't of Corrs.*, 145 F.3d 1355, 1360-61 (D.C. Cir. 1998) (involving correctional officer's threats to have inmate killed); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978) (involving correctional officer's threat to pay another officer to shoot an inmate and make it look like an accident accompanied by a gesture toward the officer's holstered gun).

But these courts do not bind the Eleventh Circuit. Nor did they address facts like those alleged here. And we are not aware of any court, much less this Court or the Supreme Court, that has previously concluded that threats of rape that occurred on a single day and not followed by additional threats or other action, stated a violation of a prisoner's right to be free from excessive force. Even if the facts alleged here do state a Fourteenth Amendment due

22-11648                Opinion of the Court                19

process violation—a question we do not decide—we cannot say that any such violation was "clearly established" in 2016, at the time of Azael's alleged conduct.

As we have mentioned, in 2016, no binding precedent from this Court or the Supreme Court established "beyond doubt," either through materially similar facts or a broad statement of principle, that a corrections officer's *verbal* threats to sexually assault a pretrial detainee, without more, rise to the level of a constitutional violation. *See Wesby*, 583 U.S. at ___, 138 S. Ct. at 589. And, in dicta in a published decision and in an unpublished decision, this Court had indicated that mere verbal threats were not cognizable constitutional violations. *See Edwards*, 867 F.2d at 1273 n.1; *Hernandez*, 281 F. App'x at 866. Given the state of our decisional law in 2016, we cannot say Azael had "fair notice" that his threats constituted a due process violation under the Fourteenth Amendment.[4]

Watkins cites *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475 (1993), for the general principle "[t]hat the Eighth Amendment protects against future harm to inmates" and "requires that inmates be furnished with the basic human needs, one of which is

---

[4] Watkins argues the district court mischaracterized his claim as one for verbal sexual harassment when his claim is for "sexual assault by way of rape threats." While the district court referred to Watkins's claim as one involving "sexual harassment," it also acknowledged that Azael's alleged conduct was objectively more serious than vulgar words or gestures, properly focused its qualified immunity analysis on Azael's alleged rape threats, and treated Watkins's claim as an excessive force claim.

'reasonable safety.'"    *See* 509 U.S. at 33, 113 S. Ct. at 2480-81 (involving a claim that officials were deliberately indifferent to an inmate's serious medical problems caused by exposure to environmental tobacco smoke).  But this principle defines the right at too high of a level of generality to put a reasonable corrections officer on notice that threats like the ones Azael allegedly made to Watkins amounted to a Fourteenth Amendment violation.[5]

Finally, Azael's alleged threats to rape Watkins were undoubtedly unprofessional and highly inappropriate.  Like sexual assault itself, threats to commit sexual assault by correctional officers serve no legitimate penological purpose and have no place in correctional facilities, and they should be dealt with swiftly and definitively.  *See DeJesus*, 14 F.4th at 1195.  However, given the binding precedents concerning verbal statements (in a single incident) without accompanying actions, we cannot say that such verbal threats present one of the exceptionally rare cases in which the conduct so obviously violates the Fourteenth Amendment that no prior case law was necessary to give a reasonable corrections officer fair notice.  *See Echols*, 913 F.3d at 1324.

## V. CONCLUSION

We affirm the district court's order denying Watkins's untimely motion to amend his § 1983 complaint to add state law

---

[5] Watkins's reliance on the Eighth Circuit's decision in *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986), is misplaced, as only decisions from the Supreme Court, this Court, or the highest court of the state can "clearly establish" a constitutional right.  *See Echols*, 913 F.3d at 1324.

claims. We also agree with the district court that because Azael acted within the scope of his discretionary authority and did not violate a clearly established Fourteenth Amendment right, he is entitled to qualified immunity. Thus, we affirm the district court's entry of summary judgment in Azael's favor on Watkins's Fourteenth Amendment claim under § 1983.

**AFFIRMED.**