[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13436

_____

D.C. Docket No. 3:16-cv-00161-TCB

RAYVIE HALL,

Plaintiff - Appellee,

versus

KIMBERLY FLOURNOY,
sued in her individual capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 17, 2020)

Before BRANCH and MARCUS, Circuit Judges, and UNGARO,[*] District Judge.

MARCUS, Circuit Judge:

_____

[*] Honorable Ursula M. Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

Rayvie Hall was arrested after marijuana was found on his property.  He now brings claims under 42 U.S.C. § 1983, alleging, among other things, false arrest and malicious prosecution, against Kimberly Flournoy, a county sheriff's deputy.  The premise of Hall's argument is that Flournoy, or one of her law enforcement colleagues, planted the marijuana they found on his property.  Flournoy moved for summary judgment, which the district court denied, rejecting her affirmative defense of qualified immunity.  The court determined that there were material issues of fact in dispute, and, therefore, the case should be presented to a jury.  Flournoy now pursues an interlocutory appeal of the district court's qualified immunity ruling.  Because Flournoy does not raise a legal question on appeal and only seeks review of the factual sufficiency of the district court's determination that there is a genuine dispute as to whether the marijuana evidence was planted, we conclude that we lack jurisdiction to hear Flournoy's appeal at this time.

I.

The relevant facts, construed in favor of Hall, the non-moving party, are these.  Hall purchased property in Meriwether County, Georgia, on April 17, 2015.  Rodriguez Favors had been selling marijuana and squatting on the property before Hall bought it.  Hall obtained a Writ of Possession on May 14, 2015 from the

2

Meriwether County Magistrate Court.  The judgment granting the Writ of Possession read:

> After hearing evidence, and the Court having determined that the Plaintiff is entitled to the issuance of a Writ of Possession in the above-styled matter;
>
> IT IS HEREBY ORDERED AND ADJUDGED that a Writ of Possession issue placing plaintiff in peaceful and quiet possession of those premises known as 40 GILBERT CIRCLE, LUTHERSVILLE, GA 30251; provided, however, issuance of the Writ of Possession be, and is hereby stayed for a period of seven (7) days from the date of this Judgment, as required by O.C.G.A. §44-7-55.

After obtaining the writ, Hall engaged the sheriff to deliver an eviction notice. Hall also told Favors he could not return to the property, and Hall claims that Favors obeyed his ban.

Sometime after obtaining the writ, the existing building on the property burned down.  Hall then built an "accessory building" on the land, designed to be his "man cave."  Inside, there was a television, pool table, stereo, table, and a refrigerator with beer, wine, and other drinks.  Hall said that he invited his family to the building for "cookouts," but he "did not allow anyone" in the building when he was not present; he "restricted" the number of people who visited the building; he "did not allow strangers" into the building, only relatives and close friends; and usually less than five people at a time were with Hall in the accessory building. However, Hall did not detail precisely how he restricted access to the premises.

3

Sometime in August 2015, Colonel Byron Hadley of the Meriwether County Sheriff's Department received an anonymous tip that illegal drugs and alcohol were being sold out of Hall's building. He passed this tip along to deputy sheriff Flournoy. Flournoy arranged for a paid confidential informant ("CI") to purchase illegal drugs from persons in the building. She had used the CI three or four times previously and considered him reliable.[1] On August 20, Flournoy executed the sting with the CI. As a precaution, Flournoy first searched the CI and his vehicle, gave him a marked bill for the purchase, and followed him to Hall's property. The CI later returned to Flournoy with marijuana, claiming he purchased it from Favors in Hall's accessory building. The CI was then paid $40 in cash, as was typical for a buy of this type.

Hall strongly denies that the CI purchased marijuana in his building, and asserts that Favors had not been present on his property for the entirety of August 2015 -- nor, he claims, since the new accessory building was erected. Flournoy admitted in her deposition that she had never seen Favors on the property herself, nor had she ever seen Favors at all. Favors was never arrested or charged in connection with the sting, and the marked bill was not recovered.

After the controlled buy, Flournoy obtained a search warrant for the premises. The warrant identified only "Rodriguez Dekota Favors" by name, but

---

[1] Flournoy did not specify the CI's gender, but we will treat him as male, as the district court did.

4

listed an address corresponding to Hall's building.  Flournoy and four other officers executed the warrant six days later and found a small amount (less than one ounce) of marijuana in a plastic bag, as well as rolling papers and a grinder.  It is unclear who found the marijuana, or where it was found;  Flournoy claims that law enforcement officers Brian Hammock and Jeremy Blount searched for and located the drugs, but she did not identify which one made the discovery, or if it was both simultaneously.  Nor did Flournoy specify where exactly the marijuana was found, only saying that some was in a grinder and some was in a plastic bag. It does not appear that there were separate rooms within the accessory building; it was an open space.  While Flournoy conceded that she was "in charge of writing the search warrant and [its] execution," she said she was not in charge of the search, which was conducted by Hammock and Blount.

Hall and his daughter waited outside while the search of the accessory building took place.  After the search concluded, Hall denied owning the marijuana, but told Flournoy that he "would accept responsibility to prevent [his] daughter from being arrested."  Flournoy proceeded to arrest Hall and a court date was set for May 24, 2016.  Notably, Flournoy did not appear in court and the charge was dismissed for want of prosecution.

Hall then brought this civil rights suit in the United States District Court for the Northern District of Georgia, on October 7, 2016, raising four claims under 42

U.S.C. § 1983: (1) an illegal search, (2) the use of excessive force, (3) false arrest, and (4) malicious prosecution. He also brought a state law claim of trespass.

After discovery, Flournoy moved for summary judgment on all of the claims. Relevant to this appeal, Flournoy argued that the search uncovered marijuana and paraphernalia; that Hall admitted the marijuana belonged to him; and that Hall had no evidence to support his assertion that Favors never returned to the property after eviction. Flournoy claimed she had at least arguable probable cause for Hall's arrest because Hall accepted responsibility for the marijuana. In the alternative, she argued that Hall had "constructive possession" of the marijuana because it was found on his property, which would support arguable probable cause as well.

The district court granted Flournoy's motion for summary judgment on the illegal search, excessive force, and state law trespass claims. However, the district court rejected Flournoy's qualified immunity defense and denied summary judgment on Hall's false arrest and malicious prosecution claims, finding that there was a genuine issue of material fact about whether Flournoy planted the marijuana in Hall's accessory building. In support, the district court first pointed to the court-ordered Writ of Possession evicting Favors from Hall's property and Hall's sworn statement that he had told Favors not to return to his property, combined with Hall's statement that he did not allow anyone into the accessory building without

being present.  The court also referenced Hall's testimony that there were no drugs or paraphernalia in his building; that he told Flournoy that the marijuana was not his; and that any confession he made was only to "take the blame" to "prevent his daughter from being arrested."  And the district court relied on Hall's affirmative testimony that access to outsiders was severely restricted; thus, Hall argued, because the marijuana and paraphernalia were not his, they must have been planted.

Taken together, the district court concluded that a reasonable jury could believe Hall's story about how the marijuana appeared in his accessory room, in part because Flournoy never "substantively" responded to Hall's claim that she had planted the evidence.  If Hall was right, Flournoy would indisputably be ineligible for qualified immunity, because probable cause could not be found.  Therefore, the district court said, there was a genuine issue of material fact as to whether the evidence was planted, and denied summary judgment on these two claims.  Flournoy appeals from that ruling.

## II.

First, we are required to explore whether we have jurisdiction to entertain this interlocutory appeal before we may proceed to the merits.  See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Without jurisdiction the court cannot proceed at all in any cause.").  Because this appeal comes before us at a

preliminary stage, and because Flournoy raises no issue other than the sufficiency of the evidence, we lack the power to hear her appeal now.

"The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. Pursuant to its constitutional authority, Congress has granted us jurisdiction generally to review "all final decisions of the district courts." 28 U.S.C. § 1291; Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373 (1981) (emphasis added). Conversely, as a court of limited jurisdiction, we are generally barred from entertaining appeals of non-final orders because we have no congressional grant to do so.[2] The long-stated purpose of the finality requirement is to promote judicial efficiency and discourage piecemeal review of the many issues arising from a lawsuit. This rule also affords us the benefit of reviewing a complete record at the conclusion of the proceeding and has the concomitant benefit of avoiding any disruption of the trial court's procedures. See Johnson v. Jones, 515 U.S. 304, 309 (1995).

Congress has not defined what a "final" decision is. Some district court decisions are obviously final in that they terminate the litigation, like a jury verdict,

---

[2] Congress has granted us jurisdiction in narrow circumstances to review the grant or denial of a preliminary injunction, as well as, in some rare cases, the power to entertain a non-final decision which has "substantial ground for difference of opinion" and would expedite the termination of the suit. See 28 U.S.C. § 1292. However, neither of these exceptions applies here.

8

a decision issued at the end of a bench trial, or an order granting final summary judgment.  But that a decision is "'final' within the meaning of § 1291 does not necessarily mean [it is] the last order possible to be made in a case."  Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964).  Thus the "collateral order doctrine" classifies some determinations, including certain denials of qualified immunity, as final for purposes of appeal, even though the underlying case is still ongoing in the trial court.  The key factor common to these orders is that they are wholly "collateral" to the merits, because any issue that is not collateral to the merits is by definition non-final until the case has been terminated.  In order to qualify as a collateral order, the decision must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment."  P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (citation omitted).

Qualified immunity is the added protection afforded government officials to protect them against "the costs of trial [and] the burdens of broad-reaching discovery," as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982); see also Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001) (observing that qualified immunity's higher

9

liability standard "protects from suit all but the plainly incompetent or one who is knowingly violating the federal law"). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

After a government official has demonstrated that the conduct at issue falls within the discretionary job responsibilities of the officer, a plaintiff must meet two requirements before qualified immunity may be rejected. First, that the officer in fact violated the plaintiff's rights, see id., and second that the violation contravened "clearly established statutory or constitutional rights of which a reasonable person would have known." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011) (citing Harlow, 457 U.S. at 818). While the first inquiry may be a mixed question of law and fact (what did the officer do and did it violate the law?), the second is purely a question of law, as it requires analysis of an issue wholly distinct from the merits of the case: even if the events transpired in the way the plaintiff asserts, did the alleged misconduct amount to a violation of clearly established law?

In Mitchell v. Forsyth, 472 U.S. 511 (1985), the Supreme Court dealt with the second requirement -- the clearly established nature of the violation -- and held that a decision denying qualified immunity would be subject to interlocutory

10

review since the clearly-established inquiry involves only "a question of law." Id. at 528. Later, in Johnson v. Jones, 515 U.S. 304 (1995), the Supreme Court clarified its approach to qualified immunity and interlocutory review. It reasoned that while "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim," Johnson, 515 U.S. at 314 (quoting Mitchell, 472 U.S. at 527), purely factual questions of whether a defendant violated the plaintiff's rights are not separable from the merits of his claim. Id. "Where . . . a defendant simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding of fact after trial, it will often prove difficult to find [any] question . . . that is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." Id. On this basis, the Court decided that when a defendant's only challenge to the denial of qualified immunity is that the record did not contain sufficient facts to conclude that the defendant violated the plaintiff's rights, an appellate court does not have interlocutory jurisdiction to review the matter. See id. at 307–08, 313 (holding that because the defendant police officer was challenging the denial of summary judgment on an excessive force claim by arguing only that she did not do what she was accused of doing -- striking, punching or kicking the plaintiff -- she was asking for a review of the claim's merits, which is not permissible on interlocutory review). The Court summed it up this way: "[A] defendant, entitled to invoke a qualified immunity

11

defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 319–20.

Since Johnson, the Supreme Court has reiterated that when legal questions of qualified immunity are raised -- either to determine whether any constitutional right was violated or whether the violation of that right was clearly established -- interlocutory appellate jurisdiction exists. But if the only question before the appellate court is a factual one, review must wait for a later time. In Plumhoff v. Rickard, 572 U.S. 765 (2014), an excessive force case, the Court found jurisdiction and distinguished Johnson because the officers "d[id] not claim that other officers were responsible for shooting Rickard; rather, they contend[ed] that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law." Id. at 773. That is, the dispute was not merely factual, since the parties agreed that these officers did shoot Rickard. The Court made it clear that the officers "raise[d] legal issues; these issues are quite different from any purely factual issues that the trial court might confront if the case were tried." Id. (emphasis added).

To be sure, the presence of a factual dispute on appeal does not automatically foreclose interlocutory review; rather, jurisdictional issues arise when the only question before an appellate court is one of pure fact. Thus, as the

12

Supreme Court made clear in Behrens v. Pelletier, when a defendant challenges the conclusion that an alleged act violated clearly established law -- a question of law --  an appellate court may also consider factual questions that are inherently tied into such an evaluation.  516 U.S. 299, 311–13 (1996) (finding jurisdiction in the legal question of whether interference by an official with the plaintiff's employment intruded on a clearly established right, even though there were also outstanding material issues of fact concerning the context of the claim).  Similarly, in Scott v. Harris, the Supreme Court exercised jurisdiction over an excessive force case raising the legal question of whether ramming a car off the road constituted a violation of the Fourth Amendment.  550 U.S. 372, 381 & n.8 (2007) ("[W]hether [the officer's] actions have risen to a level warranting deadly force is a pure question of law." (quotation and citation omitted)).  Notably, that case also raised fact questions, including how to view the facts at the summary judgment stage when videotape evidence "quite clearly contradicts the [plaintiff's] version of the story."  Id. at 378.  Nevertheless, because a legal question was involved too, an appellate court had the power to review the matter on an interlocutory basis.

Our Circuit's precedents are consistent.  See, e.g., Keating v. City of Miami, 598 F.3d 753, 759 (11th Cir. 2010) (explaining that Johnson "did not dismiss the interlocutory appeal on an issue of law concerning qualified immunity, but rather dismissed the appeal on the sole issue of disputed facts"); Bryant v. Jones, 575

F.3d 1281, 1294 n.19 (11th Cir. 2009) (observing that "we do not have jurisdiction to entertain such appeals when the defendant's argument is merely, 'I didn't do it.'" (emphasis added)); Koch v. Rugg, 221 F.3d 1283, 1296 (11th Cir. 2000) ("We lack jurisdiction for . . . appeals regarding solely evidence sufficiency because they are not immediately appealable final decisions since they involve the determination of 'facts a party may, or may not, be able to prove at trial.'" (citing Johnson, 515 U.S. at 313)); Stanley v. City of Dalton, 219 F.3d 1280, 1287 & n.11 (11th Cir. 2000) (stating that a review of factual sufficiency is appealable only if the facts are "inextricably intertwined" with a legal question, and even if so, "[a]lthough we may independently review the record facts, we will not disturb a factual finding by the district court if there is any record evidence to support that finding" (emphasis added and citations omitted)).  The long and the short of our case law is clear: if there is no legal question to review -- like whether the officer's conduct violated a plaintiff's constitutional rights or whether those constitutional rights were clearly established by the Supreme Court, this Court or the highest court of the state in which the cause arose -- we cannot review a trial court's determination of the facts alone at the interlocutory stage.

As explained further, in this appeal, Flournoy does not present a legal question such as whether her alleged conduct violated Hall's rights or whether the constitutional right in question was clearly established by the Supreme Court.

14

Rather, she only asks us to review the factual sufficiency of the district court's decision classifying the dispute at issue -- whether the marijuana found in Hall's accessory building was planted -- as genuine.[3]  Hall's evidence largely consisted of an affidavit stating that the marijuana was not his; that he "did not allow anyone" in the building when he was not present; that he "restricted" access to the building; that he obtained a Writ of Possession to keep Favors off the property; and that Favors was not on the property any time during the month of August.  These assertions, deputy sheriff Flournoy says, are not enough to create a genuine issue of fact about whether she or the other officers planted the evidence.

But Flournoy concedes that the planting of evidence, if true, would violate clearly established law.  Our precedents are, of course, also unequivocal that a law enforcement officer who plants evidence violates clearly established law.  See, e.g., Jones v. Cannon, 174 F.3d 1271, 1289 (11th Cir. 1999) ("Using or planting false evidence in an effort to obtain a conviction violates the Constitution.").  See also Napue v. Illinois, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by

---

[3] Flournoy argues for the first time on appeal that she was not "in charge" of the search and that she did not personally find the marijuana.  She claims this means she cannot be liable.  But Flournoy has waived this argument having only raised it for the first time on appeal.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotation omitted)).  We also note that at her deposition, Flournoy admitted she was "in charge" of executing the search warrant.

representatives of the State, must fall under the Fourteenth Amendment").

Because Flournoy admits, as she must, that a police officer who plants evidence

violates clearly established law, all we are left with is the factual review of what

happened -- was Hall's version of events right, or was Flournoy's?

Flournoy, nonetheless, asks us to review whether the district court was right

in determining that there was a genuine dispute about whether the marijuana was

planted, and whether a reasonable jury could believe Hall's story.  Tellingly,

Flournoy argues that the district court "took Hall's conclusory speculation as fact,

without even a scintilla of evidence" and that Hall failed to "produce more than a

scintilla of evidence."  In Johnson, the Supreme Court foresaw exactly this kind of

case, where the appellants used exactly the same language: the appellate court

lacked interlocutory jurisdiction even when the officers argued there was "not a

scintilla of evidence" to support the conduct asserted.  515 U.S. at 308 (quotation

omitted and emphasis added).  So too here.  Johnson could not be clearer: where,

like in Flournoy's case, the appellant is merely claiming, "we didn't do it," id. at

316, interlocutory review is foreclosed.

Flournoy also argues that Rowe v. City of Fort Lauderdale supports

interlocutory jurisdiction.  279 F.3d 1271 (11th Cir. 2000).  But Rowe is irrelevant.

The appeal in that case was not taken from the denial of summary judgment, but

rather from the grant of final summary judgment.  The district court found that an

16

officer was entitled to qualified immunity, and thus it "entered final judgment dismissing the case with prejudice." Id. at 1276. There is no doubt that Flournoy may proceed with an appeal at some point. But Rowe tells us nothing about our power to review interlocutory orders on appeal.

Flournoy proposes that a district court's denial of qualified immunity based on "speculation" creates a question of law that grants us jurisdiction. This argument misapprehends the specific restraints placed on the exercise of interlocutory review. What Flournoy terms as "speculation" is simply an argument about the factual inferences the district court drew from a series of circumstances. We may disagree with the inferences the district court has drawn, and they are far from airtight. However, to review that determination now would amount to nothing more than weighing the evidence supporting the district court's summary judgment determination, which is precisely what the Supreme Court has said we cannot do at this interlocutory stage.

Flournoy further claims that if this kind of "speculation" is allowed to stand at the preliminary stage, "it sets the precedent that every arrested suspect" could simply say "that ain't mine, they must have planted it," and thereby create a "triable issue" in every case. We remain unpersuaded. For one thing, Flournoy's hypothetical does not apply here. While Flournoy may disagree with the district court's evaluation of the evidence, Hall did not merely say "that ain't mine." He

17

offered a body of evidence supporting his claim that the drugs were not his, which the district court found sufficient to take the issue to a jury. Despite Flournoy's characterization of the factual dispute, this is not a case where the plaintiff failed to offer any evidentiary support for his claims.

Moreover, the Supreme Court has already contemplated the burden this rule might place on officers. Indeed, in Johnson, the Supreme Court expressly acknowledged that a rule prohibiting the review of factual sufficiency "threatens to undercut the very policy (protecting public officials from lawsuits) that (the Mitchell Court held) militates in favor of immediate appeals." Johnson, 515 U.S. at 317. Nonetheless, the Court still concluded, as a matter of policy, that "the countervailing considerations that we have mentioned (precedent, fidelity to statute, and underlying policies) are too strong to permit the extension of Mitchell to encompass appeals" asking courts to evaluate merely factual sufficiency. Id. at 317–18. [4] And with that in mind, the Court barred us from preliminarily reviewing "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id.

---

[4] As for the argument that the Supreme Court ruling in Scott v. Harris might allow for interlocutory review of facts alone when the plaintiff's story is "blatantly contradicted" by the record, 550 U.S. at 380, we need not address it today. Scott itself clearly raised the legal question of whether ramming a car off the road constitutes excessive force -- a legal issue over which appellate courts have interlocutory jurisdiction, according to Johnson. And, in any event, we are not faced with evidence from Flournoy that "blatantly contradict[s]" or categorically refutes Hall's presentation of the facts.

18

at 319–20.  Flournoy's broader argument has already been addressed -- and foreclosed -- by binding Supreme Court precedent.

Finally, Flournoy's fear that we are creating precedent for arrestees to claim that evidence was planted, destroying qualified immunity en masse, is itself unfounded.  District courts have the authority to decide in the first instance whether a claim of planted evidence is supported by enough to move the case to trial.  Even if a rush of plaintiffs begin to make specious arguments in opposition to summary judgment, we have every reason to believe that the district courts will reject these claims where the plaintiffs have failed to create a genuine issue of material fact, as set forth in the summary judgment rules and our case law.  See Fed. R. Civ. P. 56(a) (authorizing summary judgment only when "there is no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law"); Fed. R. Civ. P. 56(c) (allowing a nonmovant to dispute a material fact through an affidavit, which must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); see also, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (instructing that a "genuine" issue of fact exists to preclude summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) (recognizing that a

nonmovant's affidavit in opposition to summary judgment "cannot be conclusory"). Indeed, the Supreme Court in Johnson explained that while appellate courts may add some value in reviewing abstract legal questions, we "enjoy no comparative expertise" in determining "the existence, or nonexistence, of a triable issue of fact," which district court judges confront "almost daily." 515 U.S. at 316.

In short, Flournoy challenges no legal issue we can find. Rather, she simply asks us to review whether the evidence presented supports the trial court's determination that there was a genuine dispute of material fact over whether the marijuana was planted. Because we are asked to resolve no more at this preliminary stage, we are required to DISMISS Flournoy's appeal for lack of jurisdiction.

**APPEAL DISMISSED.**