[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14397

_____

D.C. Docket No. 7:16-cv-01334-LSC

BEVERLY SPENCER,
C.B.S. PROPERTIES LLC,
B & V WRECKER SERVICE INC,

Plaintiffs-Appellees,

versus

SHERIFF JONATHAN BENISON,
in his individual and official capacities,

Defendant-Appellant,

DREAM INC,
BELLE MERE PROPERTIES, LLC,
ACCUITY CAPITAL GROUP LLC,
BERNARD GOMEZ,
individually and as registered agent of
Belle Mere Properties LLC,
CHE D. WILLIAMSON,
individually and as registered agent of
Belle Mere Properties LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 16, 2021)

Before NEWSOM and BRANCH, Circuit Judges, and BAKER,[*] District Judge.

BRANCH, Circuit Judge:

Sheriff Jonathan Benison appeals from the district court's denial of summary judgment to him in this 42 U.S.C. § 1983 lawsuit.  Beverly Spencer sued Benison, alleging that Benison violated his Fifth and Fourteenth Amendment rights by ordering him to remove cones and vehicles that were preventing Spencer's neighbor from completing construction that Spencer alleged encroached on his property.  The district court denied Benison's motion for summary judgment because it found that Benison acted outside the scope of his discretionary authority when he ordered Spencer to remove the cones and vehicles and thus was not entitled to qualified immunity on Spencer's individual capacity claims, and also that Spencer had presented adequate evidence of a constitutional violation to sustain his § 1983 claims against Benison in both his individual and official capacities.  Because we conclude that Benison was acting within the scope of his

_____

[*] Honorable R. Stan Baker, United States District Judge for the Southern District of Georgia, sitting by designation.

2

discretionary authority when he ordered Spencer to remove the cones and vehicles and that Spencer failed to present adequate evidence of a constitutional violation to sustain his § 1983 claims, we reverse.

I.     Background[1]

A.     Facts

On April 1, 2011, Belle Mere Properties, LLC, purchased a parcel of real estate from Spencer.[2]  As part of the sale, Spencer granted Belle Mere "an easement of 25 feet on either side of the existing power line . . . for the purpose of ingress and egre[ss]."  Belle Mere then leased the property to Accuity Capital Group, LLC, which leased the property to Dream, Inc., which began operating a bingo hall on the property, called Frontier Bingo.

Shortly thereafter, Spencer and Belle Mere began to disagree over the boundaries of the easement.  In late 2015 or early 2016, Belle Mere decided to expand a previously constructed roadway running through the easement from Frontier Bingo to U.S. Highway 11.  On January 13, 2016, Spencer called 911 to

---

[1] For purposes of this appeal, we will "take the facts that the district court assumed when it denied qualified immunity as a given." *Stanley v. City of Dalton*, 219 F.3d 1280, 1287 (11th Cir. 2000).

[2] The plaintiffs in this lawsuit are Beverly Spencer, CBS Properties, LLC, and B & V Wrecker Services, Inc.  We will refer to the plaintiffs collectively as "Spencer."  We will also refer to defendants Belle Mere, Bernard Gomez, and Che Williamson collectively as "Belle Mere."  If we need to identify Beverly Spencer, Bernard Gomez, or Che Williamson individually, we will use their full names.

report that a bulldozer was trespassing on his property. A sheriff's deputy responded to the call and asked the bulldozer operator to stop working. The bulldozer operator complied with the deputy's request. On January 18, 2016, Spencer again called 911 to report that a bulldozer was trespassing on his property. Another sheriff's deputy responded to the call and asked the bulldozer operator to stop working, and the bulldozer operator complied. Finally, on February 24, 2016, Spencer called 911 to complain about continued construction. This time, Benison responded to the call.

When Benison arrived, he observed that Spencer had placed cones and vehicles to block construction from taking place.[3] He also observed that traffic was backed up on U.S. Highway 11. Benison told Spencer that he was concerned that the cones and vehicles would prevent customers from being able to access Frontier Bingo and that the obstructions were a public safety issue because the fire department might not be able to access Frontier Bingo in case of an emergency.[4] He then said "I've got customers in here. People got customers in here. You can't

---

[3] We note that the parties dispute whether Benison knew that the cones and vehicles were on Spencer's property. But even assuming, as the district court did, that "Sheriff Benison knew of the boundaries of the easement," "that Frontier Bingo and its construction workers were trespassing on [Spencer's] property," and that Benison "knowingly allowed the construction workers to continue to trespass on [Spencer's] land," Benison is entitled to summary judgment on Spencer's claims.

[4] Spencer alleges that, after Benison arrived, Benison entered and exited Frontier Bingo with Bernard Gomez before speaking to Spencer.

block these folks." Spencer denied that his cones and vehicles were preventing people from entering or exiting the bingo hall.[5]

Benison then ordered Spencer to remove the cones and vehicles and threatened to arrest Spencer if he continued to block the road. While at the scene, Benison spoke by phone with Spencer's lawyer. Spencer's lawyer informed Benison that "they were attempting to get an injunction to prevent the construction workers from coming onto Spencer's property."[6] Spencer alleges that, as a result of Benison's order, he stopped confronting Belle Mere about its construction and that, accordingly, Belle Mere ultimately was able to complete the construction of a roadway that encroached on his property. Belle Mere's road construction, Spencer contends, deprived him of his property.

Spencer asserts that Benison had a personal financial interest in the success of Frontier Bingo. Under the Alabama Constitution, Benison had the authority to "promulgate rules and regulations for the licensing, permitting, and operation of bingo games within [Greene County]." Ala. Const. amend. 743. In 2011, pursuant to this authority, Benison promulgated the Rules and Regulations for the Operation of Bingo Within Greene County Alabama ("Rules and Regulations"). The Rules

---

[5] Although Spencer alleged that "[n]othing was blocking the roadway to hinder any vehicle from entering or exiting the . . . property," and that his "vehicles were not blocking access to the . . . bingo hall," he did not dispute that traffic was backed up on U.S. Highway 11.

[6] Spencer failed to present any evidence that he pursued litigation or continued to seek an injunction in state court after Benison issued the order.

and Regulations provided that Benison had the authority to license and regulate bingo halls in Greene County and that the Greene County Sherriff's Office would receive half of each $2,500.00 license fee paid by the bingo halls.  Subsequent amendments to the Rules and Regulations provided that the Greene County Sheriff's Office would receive $110 a month for each electronic bingo machine.

B.      Procedural History

On August 16, 2016, Spencer sued Benison in his individual and official capacities under 42 U.S.C. § 1983 for deprivation of property and liberty rights, and conspiracy to commit § 1983 violations.[7]  He alleged that Benison deprived him of property without due process and that Benison conspired with others to "take and use" his property "without due process or compensation."[8]  In particular, he alleged that, because of Benison's actions, Belle Mere had been able to "buil[d] a roadway outside the bounds of [its] easement and on [his] property," and "remove[] dirt and many trees from [his] property for [its] own use."  After discovery, Benison moved for summary judgment on Spencer's claims and asserted the defense of qualified immunity.

---

[7] Spencer also sued Gomez, Williamson, Belle Mere, Accuity, and DREAM; however, the claims against those defendants are not the subject of this appeal.

[8] Spencer also alleged state-law claims against Benison, but the district court dismissed those claims after finding that Benison was entitled to absolute immunity under Alabama law for those claims because he was "executing his duties as sheriff" at the relevant time.

On October 9, 2018, the district court denied Benison's motion for summary judgment. It found that Benison was not entitled to qualified immunity on Spencer's individual capacity claims because he "failed to establish that he was acting within the scope of his discretionary authority" when he ordered Spencer to remove the cones and vehicles. It also found that Benison was not entitled to summary judgment on Spencer's individual or official capacity claims because Spencer had presented sufficient evidence of a constitutional violation, at that stage of the proceedings, to sustain his § 1983 constitutional and conspiracy claims.[9] Benison timely appealed.

## II.    Standard of Review

We review the district court's denial of qualified immunity to Benison *de novo*. *Patel v. City of Madison*, 959 F.3d 1330, 1336 (11th Cir. 2020). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Grider v. City of Auburn*, 618 F.3d 1240, 1246 n.1 (11th Cir. 2010). We also review issues of appellate jurisdiction *de novo*. *Patel*, 959 F.3d at 1337.

---

[9] The district court had previously dismissed Spencer's § 1983 claim "[t]o the extent that [Spencer sought] money damages from Benison in his official capacity," but permitted Spencer's claims for injunctive relief to proceed against Benison in his official capacity.

III.    Appellate Jurisdiction

As an initial matter, Spencer argues that we lack appellate jurisdiction over this interlocutory appeal because Benison has only appealed issues of evidentiary sufficiency. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996) ("[W]e lack interlocutory appellate jurisdiction . . . where the sole issues on appeal are issues of evidentiary sufficiency."). In general, "we are . . . barred from entertaining appeals of non-final orders." *Hall v. Flournoy*, 975 F.3d 1269, 1274 (11th Cir. 2020); *see* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). But under the "collateral order doctrine," we may review "some determinations, including certain denials of qualified immunity . . . even though the underlying case is still ongoing in the trial court."[10] *Hall*, 975 F.3d at 1274. In particular, we may review the denial of a claim of qualified immunity "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Hall*, 975 F.3d at 1276 ("[T]he Supreme Court has reiterated that when legal questions of qualified immunity are raised—either to determine whether any constitutional right was violated or whether the violation of that right was clearly established—interlocutory appellate jurisdiction exists."); *Cottrell*, 85 F.3d at 1485

---

[10] A collateral order is a decision that "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Hall*, 975 F.3d at 1274.

(holding that we may exercise jurisdiction "where the denial is based even in part on a disputed issue of law").

We have jurisdiction over Benison's appeal because it turns on issues of law. Benison disputes the level of generality the district court used to assess the scope of his discretionary authority, which is an issue of law. *See Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (treating the scope of an officer's discretionary authority as an issue of law). He also challenges whether Spencer can establish a "violation of a constitutional right" and whether Spencer's "constitutional right[s] [were] 'clearly established' at the time" he acted—both issues of law as well. *Cottrell*, 85 F.3d at 1485 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Accordingly, we have appellate jurisdiction to entertain this appeal.

## IV.    Spencer's Individual Capacity Claims

The district court found that Benison acted outside the scope of his discretionary authority when he ordered Spencer to remove the cones and vehicles and that Spencer sufficiently demonstrated, at this stage of the proceedings, that Benison violated clearly established law under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment.

Benison argues that the district court erred in denying him summary judgment on Spencer's individual capacity claims on qualified immunity grounds.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To invoke the defense of qualified immunity, a government official must have been acting within the scope of his "discretionary authority" when the allegedly wrongful acts occurred. *Grider*, 618 F.3d at 1254 n.19. After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). This "two-pronged analysis may be done in whatever order is . . . most appropriate for the case."[11] *Grider*, 618 F.3d at 1254 (citing *Pearson*, 555 U.S. at 236).

---

[11] Spencer argues that we may not address the district court's analysis of the merits of his § 1983 claim. He maintains that the district court's discussion of these issues was dictum because it had already concluded that Benison acted outside the scope of his discretionary authority and was not entitled to qualified immunity. We disagree. "[I]n this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings." *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008). Thus, we may address the district court's analysis of the merits of Spencer's § 1983 claim.

A    Scope of Benison's Discretionary Authority

Benison argues that the district court erred when it found that he was acting outside the scope of his discretionary authority when he ordered Spencer to remove the cones and vehicles. To prove that he acted within the scope of his discretionary authority, Benison was required to show that he acted: "(1) . . . pursuant to the performance of his duties, and (2) within the scope of his authority." *Davenport*, 906 F.3d at 940 (quoting *Harbert Int'l*, 157 F.3d at 1282). Put differently, he was required to show that he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id*. (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

The district court framed its inquiry as "whether it is within a sheriff's responsibilities as a law enforcement officer to order the removal of a private landowner's property, while it is on that landowner's property, absent a court order." But this framing of the inquiry was erroneous because it failed to strip out the allegedly illegal conduct—ordering the removal of a private landowner's property, while it is on that landowner's property, absent a court order. *See Harbert Int'l*, 157 F.3d at 1282 ("The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." (quotation omitted)); *Carruth v.*

11

*Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019) ("A plaintiff cannot plead around qualified immunity simply by saying that the official was animated by an unlawful purpose. The exception would swallow the rule.").

Instead, the district court should have "look[ed] to the general nature of [Benison's] action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Davenport*, 906 F.3d at 940 (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)); *see Harbert Int'l*, 157 F.3d at 1282 (asking "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties" (quotation omitted)).

"[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." *Holloman*, 370 F.3d at 1266. "[W]e must be sure not to characterize and assess the defendant's act at too high a level of generality" because "[n]early every act performed by a government employee can be described, in general terms, as ostensibly 'furthering the public interest.'" *Id.* Thus, "[i]f we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities." *Id.*

12

We therefore must evaluate a government official's actions at "the minimum level of generality necessary to remove the constitutional taint." *Id*.

"We look to state law to determine the scope of [Benison's] discretionary authority." *Davenport*, 906 F.3d at 940. Under Alabama law, "[a] sheriff and his or her deputies are law-enforcement officers authorized to preserve peace and public order." *Ex parte Fielding*, 86 So. 3d 354, 358 (Ala. 2011). Sheriffs have the duty to "ferret out crime" and "perform such . . . duties as are or may be imposed by law." Ala. Code § 36-22-3. "His duty in this respect is similar to that of a policeman." *Jones v. Buckelew*, 25 So. 2d 23, 25 (Ala. 1946). Further, the motor vehicle and traffic laws of Alabama provide that "[o]utside a business . . . no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway . . . ." Ala. Code. § 32-5A-136(a). The motor vehicle and traffic laws also provide that "no person shall . . . park a vehicle . . . [a]longside or opposite any street excavation or obstruction when stopping, standing, or parking would obstruct traffic" or "in front of a public or private driveway." Ala. Code § 32-5A-137(a)(1) & (2). Accordingly, it was a legitimate job-related function for Benison, as an Alabama sheriff, to seek the removal of cones and vehicles for the purposes of achieving public safety.

13

Benison also acted "through means that were within his power to utilize." *See Davenport*, 906 F.3d at 940 (quoting *Holloman*, 370 F.3d at 1265). Here, Benison carried out his duties by verbally commanding Spencer to remove the cones and vehicles and by threatening arrest should he fail to comply. Spencer has not argued that these specific means were beyond Benison's "power to utilize." Thus, we conclude that Benison was acting within the scope of his discretionary authority.

B.    Due Process Clause

Benison argues that the district court erred in finding that Spencer had presented sufficient evidence, at this stage of the proceedings, to prove a violation of clearly established law under the Due Process Clause of the Fourteenth Amendment.[12] "Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." *Vineyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (quoting *Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995)). To prevail on his § 1983 due process claim, Spencer was required to prove three elements: "(1) a deprivation of a constitutionally-protected . . . property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d

---

[12] The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

14

1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  The district court found that, at this stage of the proceedings, Spencer "presented sufficient evidence that [he] was deprived of a constitutionally protected property interest," "that there was state action," and that there was constitutionally-inadequate process.

Benison does not dispute that his order to move cones and vehicles constituted "state action," but he contends that the district court erred by finding that his actions caused a deprivation of a constitutionally-protected property interest.  "A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."  *Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1165 (11th Cir. 2005); *see Porter v. White*, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).  Spencer alleges that he suffered "the taking and disturbance of [his] soil and timber" and the denial of his "use of and access to [his] property."[13]  The district court assumed that Benison's order to remove the cones and vehicles caused Spencer to suffer those injuries.  But Spencer provided no evidence that Benison's order caused him to

---

[13] We assume, without deciding, that Belle Mere's construction deprived Spencer of a constitutionally-protected property interest.  To the extent Spencer argues that Benison's order to move cones and vehicles temporarily was *itself* a deprivation of a constitutionally-protected property interest, such a temporary deprivation is *de minimis* and cannot support his claims.  *See Ingraham v. Wright*, 430 U.S. 651, 674 (1997) ("There is, of course a de minimis level of imposition with which the Constitution is not concerned.").

15

suffer those injuries.  Instead, he alleged that "as a result of Sheriff Benison's order, he stopped confronting Frontier Bingo, and it was able to complete construction that encroached upon his property."

This allegation was plainly inadequate to establish the required causal connection between Benison's order and the alleged deprivation.  Under § 1983, Benison was "responsible for the natural and foreseeable consequences of [his] actions."  *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000); *see id.* ("[A] plaintiff must show that . . . [their] injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue.").  But Spencer's decision to stop confronting Frontier Bingo about its construction was not a natural and foreseeable consequence of Benison's order, and Spencer thus failed to demonstrate that Benison's actions caused him to be deprived of a constitutionally-protected property interest.  *See Carruth v. Bentley*, 942 F.3d 1047, 1056 ("The requisite causal relation for a § 1983 claim does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." (internal quotation marks and citation omitted)).  In fact, after Benison issued the order, Spencer's lawyers informed him that they were seeking an injunction to prevent the construction from continuing.  Spencer's later decision not to pursue litigation or

continue to seek an injunction in state court lacks an adequate causal connection to

Benison's order.

Because Spencer failed to show that Benison's actions caused a deprivation

of a constitutionally-protected property interest, Benison is entitled to summary

judgment on Spencer's due process claim in his individual capacity.

C.    Takings Clause

Benison also argues that the district court erred in finding that Spencer

presented sufficient evidence, at this stage of the proceedings, to prove a violation

of clearly established law under the Takings Clause of the Fifth Amendment.[14]  A

taking must be the "intended or . . . foreseeable result of authorized government

action." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 39 (2012); *see*

*Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003) ("[A]

taking only results when the government intends to invade a protected property

interest or the asserted invasion is the direct, natural, or probable result of an

authorized activity and not the incidental or consequential injury inflicted by the

action." (internal quotation marks and citation omitted)).  Spencer had "the burden

of proof to establish that the government action caused [his] injury." *St. Bernard*

---

[14] The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation."  U.S. Const. amend. V; *see Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994) (acknowledging that the Takings Clause was "made applicable to the States through the Fourteenth Amendment").

17

*Par. Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018); *see also In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 146 Fed. Cl. 219, 257 (2019) ("Establishing causation is a vital component of the foreseeability inquiry."). Foreseeability in this context is an objective inquiry. *See Moden v. United States*, 404 F.3d 1335, 1344 n.3 (Fed. Cir. 2005).

The district court found that Benison caused a taking by giving "Frontier Bingo's customers a 'continuous right to pass to and fro'" across Spencer's property.[15] But Benison did not give Frontier Bingo's customers such a right—rather, he ordered Spencer to remove vehicles and cones that he claimed were creating a public safety issue. Spencer argues that he stopped confronting Frontier Bingo because of Benison's order, which allowed Frontier Bingo to complete the construction that encroached on his property. But Benison's order cannot reasonably be construed as an order for Spencer to stop confronting Frontier Bingo. Spencer's unilateral decision to do so—and his failure to pursue litigation or continue to seek an injunction—is what caused the alleged taking. Thus, Spencer failed to establish that Benison's actions caused a taking. *See Cary v.*

---

[15] A *per se* taking occurs when the government directly appropriates private property. *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018). A taking can also occur "when the government gives third parties 'a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed,'" or even when the government commits "a temporary or intermittent invasion of private property." *Id*. (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 832 (1987)).

*United States*, 552 F.3d 1373, 1379 (Fed. Cir. 2009) ("[I]njury may not be foreseeable if an intervening cause breaks the chain of causation." (quotation omitted)); *L & W Constr. LLC v. United States*, 148 Fed. Cl. 417, 424 (2020) ("A mere causal link through the agency of a third force, perhaps appropriate in a tort context, is not sufficient to allege a taking."). Because Spencer failed to prove that Benison's order caused a taking, Benison is entitled to summary judgment on Spencer's takings claim in his individual capacity.

V.     Spencer's § 1983 Conspiracy Claim

Benison next argues that he is entitled to summary judgment on Spencer's § 1983 conspiracy claim. The district court denied Benison's motion for summary judgment on that claim, finding that Spencer "presented sufficient evidence for a reasonable jury to infer that . . . Benison reached an agreement to violate [his] constitutional rights."

Because Spencer failed to establish an underlying violation of his constitutional rights, which is required to sustain a § 1983 conspiracy claim, we reverse the district court's denial of Benison's motion for summary judgment on Spencer's § 1983 conspiracy claim. *See Grider*, 618 F.3d at 1260 ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying right."); *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 (11th Cir. 2009) (per

19

curiam) (noting that "a plaintiff must demonstrate a denial of constitutional rights to sustain a conspiracy claim under § 1983").

## VI.    Spencer's Official Capacity Claims

Benison's final argument is that he is entitled to summary judgment on Spencer's official capacity claims.  Although "[w]e do not have interlocutory appellate jurisdiction to review a denial of summary judgment on an official capacity claim standing alone," *Hartley v. Parnell*, 193 F.3d 1263, 1272 (11th Cir. 1999), we may exercise pendant appellate jurisdiction to review those claims to the extent that they are "inextricably intertwined with an appealable decision," *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (quotation omitted).  "Matters may be sufficiently intertwined where they implicate the same facts and the same law." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (internal quotation marks and citation omitted; alteration adopted).  Here, we choose to exercise pendant appellate jurisdiction over Spencer's official capacity claims because the resolution of those claims is inextricably intertwined with our resolution of Spencer's individual capacity claims.  *See id.*

We have already concluded that Spencer failed to establish a violation of the Due Process Clause of the Fourteenth Amendment or of the Takings Clause of the Fifth Amendment.  Because those alleged violations form the basis of Spencer's official capacity claims, the two sets of claims "implicate the same facts and the

same law," *Smith*, 834 F.3d at 1292 (quotation omitted; alteration adopted), and are inextricably intertwined.  Because Spencer failed to establish a violation of his constitutional rights, Benison is entitled to summary judgment on Spencer's official capacity claims.  *See Hudgins v. City of Ashburn*, 890 F.2d 396, 407 (11th Cir. 1989).

## VII.   Conclusion

For these reasons, we reverse the district court's order denying Benison's motion for summary judgment.

**REVERSED.**